American Electronics, Inc., et al., Respondents-Appellants, v. Neptune Meter Company et al., Appellants-Respondents.

First Department, December 2, 1969.

*Jacob Imberman* of counsel (*David I. Goldblatt* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for respondents-appellants.

*John Van Voorhis* of counsel (*Pollack Greenspoon & Singer* and *Ferguson, Idler & Hayes,* attorneys), for appellants-respondents.

Bastow, J.   Defendants appeal from a judgment entered upon a decision following a nonjury trial awarding plaintiffs slightly less than $300,000 as compensatory damages for unfair business competition.

The issues presented by this appeal were previously before this court (30 A D 2d 117).  We there held that the proof sus-

tained the findings of the trial court that defendants* had engaged in unfair business practices and had secured for themselves at plaintiffs'* expense a public contract for the manufacture and installation of toll collection equipment on the Connecticut Turnpike. We concluded, however, that punitive damages had been improperly awarded and further that the proper rule for fixing compensatory damages had not been applied. We accordingly reversed and granted a new trial limited to the issue of compensatory damages.

In the light of the proof submitted at the second trial we comment briefly on the proof as to compensatory damages submitted at the first trial. Plaintiffs there presented two alternative methods of computing their actual damages. Both of these were based fundamentally on proof of plaintiffs' estimated profit percentage on all sales for a period of years prior to and during the year that plaintiffs would have performed the contract if they had been the successful bidders. One of these methods produced a damage figure of $299,251.92; the other the amount of $185,112.27. The trial court without elucidation found that plaintiffs would have made a net profit from the Connecticut contract of $250,000.

In passing it is scarcely necessary to state that if we had concluded that damages had been properly computed by either method, or any reasonable variant thereof, the awarded amount of $250,000 would have been increased or decreased to the found proper sum. Instead we specifically stated (30 A D 2d 117, 119) " that the proper rule of damage was not applied " and went on to state with precision our view of the requisite proof: " Damages should be based on the contract price, less the cost of labor, material and applicable overhead. By applicable overhead we mean only the additional overhead, if any, necessary for the completion of this contract. In other words, plaintiffs' damages are measured by the contract price less what would have been plaintiffs' cost of performance ".

All of this was ignored on the new trial. Plaintiffs, with some minor variations, produced the same type of proof that had been submitted at the first trial. An arbitrary base period of 47 months (Feb. 1, 1954 to Dec. 31, 1957) was selected and the per· centage of plaintiffs' costs to receipts from all contracts and all

---

* Plaintiff, Taller & Cooper, Inc. (T and C), which was the unsuccessful bidder in 1957 for the subject public contract, was subsequently acquired by plaintiff, American Electronic, Inc. The successful bidder was defendant, The Electric Signal Company, Inc., a subsidiary of defendant, Neptune Meter Company. The individual defendants are former employees of T and C. For brevity, the parties will be referred to as " plaintiffs " and " defendants ".

types of work was computed. This percentage was applied to the bid figure that plaintiffs had unsuccessfully submitted because of the wrongful acts of defendants. Having used the same basic method of computing damage as that utilized at the first trial plaintiffs not unexpectedly produced an amount of $299,607.94 which, of course, practically duplicated the higher first trial figure of $299,251.92. Indeed, during the trial the court asked plaintiffs' counsel if the proof differed in any respect from that submitted at the first trial. The response was "Not substantially, Judge, no. I am the first one to admit it".

In view of the persistency of plaintiffs in refusing to comply with the clear mandate of our previous opinion we briefly elaborate thereon. The basic rule of damage in a case of unfair business competition is the amount plaintiff would have made except for the wrongful acts of defendant (cf. *Michel Cosmetics* v. *Tsirkas,* 282 N. Y. 195, 199). Where the result of the wrongful acts is to destroy or permanently cripple the business structure of a plaintiff proof of damage may range over a wide area. (Cf. *Jones Co.* v. *Burke,* 306 N. Y. 172; *Defler Corp.* v. *Kleeman,* 19 A D 2d 396, 403, affd. 19 N Y 2d 694.)

Such is not this case. The compensatory damages to which plaintiffs may be entitled must flow from the finding made following the first trial and previously affirmed by this court that plaintiffs would have been awarded the contract for the manufacture and installation of the toll collection equipment had it not been for the lower and accepted bid submitted by defendants. It was in the light of these facts that our previous opinion directed retrial of the issues as to the profit plaintiffs would have made if their bid had been accepted. We reject (as we did previously) the submitted proof of profits as the basis of an award because it is not only highly speculative but patently subject to many contingencies, dependent upon market fluctuations and the chances of business all of which made the proof an unworthy criterion for an estimate of damages.

We are not impressed with the contention of plaintiffs that no better proof of damages may be submitted because their comptroller some years after this action was commenced directed destruction of plaintiffs' general ledgers and other books for the crucial period. The record before us contains the specifications for the toll collection project that culminated in the award of the contract to defendants. Examination thereof reveals a detailed list of the equipment that was to be furnished for each of the 72 toll lanes on the turnpike. There is further proof in the record that prior to submitting their unsuccessful bid plaintiffs had prepared work sheets consisting of details of necessary

materials and cost thereof; calculations of labor costs and estimated overhead. When queried as to where these records were the former president of the plaintiff, Taller & Cooper, Inc., replied "my lawyer would have them". They were not produced on the trial. It is reasonably clear that if plaintiffs are so inclined they may utilize these records to compute with reasonable accuracy the profit they would have made if their bid had been accepted.

Plaintiffs should have another opportunity to attempt to establish their damage by proper proof. Failing so to do plaintiffs are entitled only to nominal damages (13 N. Y. Jur., Damages, § 7; *Slingerland* v. *International Contr. Co.*, 169 N. Y. 60, 73; *Biltmore Pub. Co.* v. *Grayson Pub. Co.*, 272 App. Div. 504).

We do not reach or pass upon the rate of interest plaintiffs may be entitled to receive (cf. CPLR 5004; General Obligations Law, § 5-501) on any award that may be made following the third trial. If nominal damages should be found the issue would become academic.

The judgment should be reversed on the law and the facts, with costs to defendants to abide the event but disbursements to defendants absolutely, and a new trial directed limited solely to the issue of compensatory damages.

CAPOZZOLI, J. P., McGIVERN and STEUER, JJ., concur.

Judgment unanimously reversed, on the law and the facts, and a new trial directed limited solely to the issue of compensatory damages, with costs to defendants-appellants-respondents to abide the event but disbursements to defendants-appellants-respondents absolutely. The appeal from the order entered on April 22, 1969, is dismissed as academic.