**FEDERAL FOLDING WALL CORP.,**
**Plaintiff,**

**v.**

**NATIONAL FOLDING WALL CORP.,**
**Defendant.**

**No. 68 Civ. 3130.**

United States District Court,
S. D. New York.

Nov. 18, 1971.

Mackler Brothers, New York City, for plaintiff; Seymour G. Mackler, New York City, of counsel.

Doman, Spellman & San Filippo, New York City, for defendant; Augustin J. San Filippo, New York City, of counsel.

PALMIERI, District Judge.

### Preliminary Statement

This action for trademark infringement and unfair competition was tried to the Court without a jury. The plaintiff, Federal Folding Wall Corp. (Federal) was created by one Jack Genison, a former contract employee of defendant National Folding Wall Corp. (National). It was created for the express purpose of competing with defendant National in precisely the same type of business in which Genison had engaged as National's employee. The contract by which Genison was bound to National was prepared largely by Genison himself and gave him a large measure of control and independence with respect to the sales and development of the products involved, namely the manufacture, sale and installation of wood folding or sliding walls, partitions, doors, wardrobes and similar goods. The agreement, which ran from June 27, 1963 to June 30, 1972, provided Genison with substantial financial and profit-sharing benefits; contained an automatic renewal clause, and provided that in the event of termination and a failure to arrive at a new agreement,

Genison "shall not attempt to sell any products of the same nature . . . himself or for any other Company." It also gave Genison what amounted to a first refusal option in the event National were to sell its business. In effect, therefore, Genison had operated National pretty much as his own enterprise under the wing of a group of companies owned by one Louis Greco and his three sons. Towards the end of 1965, Genison recruited two employees of National and began perfecting his plans surreptitiously to set up the plaintiff Federal as a competing entity. In February of 1966 he confronted the Grecos with his decision, leaving Mr. Louis Greco frightened and shaken. He thereafter set up business under Federal taking two of National's employees with him. Eventually four others from National joined him. Apparently in the belief that offense is the best defense, Federal brought this baseless suit against National. It should be noted parenthetically that prior to this lawsuit the defendant had been unsuccessful in an arbitration proceeding involving the trade name Fairhurst in connection with its folding wall business. The defendant had acquired the right to use this mark pursuant to a license agreement which it held by assignment from Technoply Corporation and to which John T. Fairhurst Company, Inc. (Fairhurst) and Technoply Corporation were parties. The license agreement was held to have been validly terminated. Since National had sought to resist cancellation of the agreement and had failed to sustain its position in the arbitration proceeding, the plaintiff here pursued its cause of action with an assured sense of victory, having in the meantime secured the Fairhurst license for itself, confident that National, deprived of its license agreement, was fair game for claims of trademark infringement and unfair competition at the hands of plaintiff. The plaintiff had become the licensee of Fairhurst in 1966. But it should be stressed that the Fairhurst licensing background to this litigation has only a peripheral relevance. The facts before this Court demonstrate that if National was unable to continue in business and lost its license from Fairhurst it was due directly to the machinations of Genison and to his repudiation of his contractual obligations with National. National, after Genison's defection, was unable to comply with its obligations to Fairhurst. Genison appeared as a witness before this Court. His testimony proved to be largely unreliable and unpersuasive. There can be no doubt that Genison, aided and abetted by Zimmer and Sanchez, the two former employees of National, succeeded in causing National to lose its Fairhurst license, and in obtaining it for themselves in the name of Federal.

In denying Federal's motion for summary judgment in this litigation, Judge McLean of this court held that the arbitration award was not *res judicata* and could not work a collateral estoppel of defendant National; that Genison failed to deny the charge of breach of fiduciary obligation; that the arbitrators presumably found the termination of National's licensing agreement proper because its sales had not reached the required minimum, thus leaving open and undecided the question as to whether Genison breached his fiduciary obligation for his own benefit and had induced Fairhurst to exercise its right to termination. These open questions are here and now decided adversely to Genison and to Federal.

In amplification of what has already been said, the findings of fact and conclusions of law which follow are intended to demonstrate that the complaint must be dismissed with prejudice and that defendant is entitled to relief.

## FINDINGS OF FACT

1. John T. Fairhurst Company, Inc. (Fairhurst) was the owner of the duly registered trademark "Fairhurst" and holds Certificate of Registration No. 550–184 for the said trademark issued by the United States Patent Office on October 30, 1951. In 1963 it licensed

Technoply Corporation (Technoply) to use the trademark exclusively. In November 1964, Technoply assigned its exclusive license to defendant.

2. Fairhurst Industries, Inc. is the parent of Federal Folding Wall Corp., the plaintiff herein, and is not a party to this action. Plaintiff has failed to establish its right to the use of the Fairhurst trademark which is the subject of this litigation. Although plaintiff claims to have become the sole and exclusive owner of the trademark by virtue of an assignment from Fairhurst on or about June 1, 1966, the legal effect of this purported assignment was vitiated by the wrongful actions of plaintiff and its alter ego, Jack Genison, as more particularly described herein.

3. The advertising containing the name Fairhurst was being conducted by Fairhurst Industries, Inc. which uses its own name in these advertisements and not Federal Folding Wall, the plaintiff herein.

4. At no time did plaintiff Federal use the name Fairhurst in its advertisements.

5. Due to the continued, and subsequent to July 11, 1969, exclusive use of the Fairhurst trademark by Fairhurst Industries, Inc., said Fairhurst Industries, Inc. is an indispensable and proper party to the action.

6. The Fairhurst trademark was obtained by defendant on November 17, 1964, but not used until February 1966, and its use by defendant was terminated on July 11, 1969, the date of the American Arbitration Association's decision to the effect that Fairhurst had the right to rescind the assignment of its trademark to defendant.

7. The use of the name Fairhurst by defendant was lawfully continued until July 11, 1969, on the advice of counsel pending the decision of the American Arbitration Association.

8. The stockholders' agreement with respect to the new competing corporation, plaintiff herein, by Sanchez, Zimmer and Genison was prepared about a week before January 26, 1966, by plaintiff's present attorneys who also represented the John T. Fairhurst Company, Inc., the owner of the trademark, at the arbitration proceeding and who knew, at the time the agreement was prepared, that they were still employed by defendant National.

9. Genison had a written employment agreement with defendant National at the time he arbitrarily terminated his employment with it. He repudiated his contract in order to compete with defendant National by forming another corporation, the plaintiff Federal, and taking defendant's key employees with him, in clear violation of his written contract and his fiduciary obligations to the defendant.

10. Genison did not rescind or cancel his employment contract with defendant with the consent or acquiescence of defendant or its officers.

11. Genison, Sanchez and Zimmer decided to go into business together and to compete with their employer the defendant, around Christmas of 1965. They did not tell any of the Grecos (officers of defendant corporation) until the middle or end of January, 1966, and remained on the defendant's payroll as paid employees until February, 1966.

12. The three key employees of defendant's Fairhurst folding door division, to wit, Genison, Sanchez and Zimmer, left defendant's employ and formed their own business in competition with defendant in February, 1966.

13. Of the original twelve employees of defendant National, six became employees of plaintiff Federal after Genison left the defendant corporation and formed the plaintiff corporation in competition with his former employer.

14. Notwithstanding the use of the name Fairhurst and after the three key employees left defendant's employ, defendant's sales and profits were materially reduced.

15. National Folding Wall Corp. was organized in 1959 and Jack Genison was employed by the corporation from its inception.

16. The written employment agreement between National and Genison was executed on June 13, 1962. This agreement was prepared by Genison.

17. Fairhurst entered into a licensing agreement with Technoply on May 1, 1963.

18. An agreement was entered into between National and Technoply on November 17, 1964, wherein Technoply assigned the licensing agreement to National; Midhattan (National's affiliate) purchased certain lumber for $80,000, and National agreed to finish all contracts which Technoply had obtained. An assignment was executed by Technoply to National of the Fairhurst contract.

19. The manufacture of the Fairhurst products in which National became engaged required the use of special hardware. Albert Voight Industries, Inc. (Voight) held for many years the exclusive license from Fairhurst to manufacture this hardware.

20. In November, 1964, a dispute existed between Voight and National with respect to the procurement of the hardware manufactured by Voight. This dispute was ultimately settled in February, 1966. During the pendency of this dispute, Genison acted as National's spokesman.

21. As long as its dispute with Voight was outstanding, National had difficulty getting hardware from Voight and could not manufacture Fairhurst doors without it.

22. The availability of Voight hardware, or its equivalent, was essential to any production of any Fairhurst products. Genison was aware of this at all times—when he acted as National's spokesman and later when he effected the settlement with Voight thereby securing the return to Fairhurst of tools, jigs and dies in the possession of Voight.

23. Throughout his contacts with the Voight firm, Genison acted for his own benefit and in violation of his fiduciary obligations to National.

24. Genison concluded the settlement with Voight after he had been in negotiation with Fairhurst to take over the franchise; after he had concluded his agreement with Sanchez and Zimmer; after Federal Folding Wall Corp. had been organized, and after he had concluded all of his arrangements to go into business for himself.

The reasonable inferences to be drawn from the delay in settling the Voight matter, as well as all the surrounding circumstances, make it abundantly clear that Genison was engaged in a scheme to prevent National from producing Fairhurst doors with a view to causing the cancellation of the Fairhurst licensing agreement with National so that Genison could take over National's folding wall-sliding door business for his own benefit. By succeeding in effectuating this scheme Genison profited from his own wrongs.

25. The following chronology supports what has just been said in the preceding finding:

In January 1966 Genison set Fairhurst and discussed his taking over the Fairhurst franchise; on January 26, 1966, the agreement between Genison, Sanchez and Zimmer was executed whereby they agreed to go into business together and to form Federal; on February 1, 1966, Federal was organized by Genison, Sanchez and Zimmer; on February 11, 1966, Genison quit National; on February 24, 1966, Fairhurst sent a letter purporting to terminate National's franchise agreement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action. 28 U.S.C. § 1338; Hy-Way Systems, Inc. v. Jadair, Inc., 311 F.Supp. 454 (E.D.Wis.1970).

2. The plaintiff is the corporate vehicle of Jack Genison, who

breached his contract of employment with the defendant by organizing and incorporating the plaintiff, with the participation of other employees of the defendant, while Genison was still in the employ of the defendant, for the purpose of competing with the defendant and inducing John T. Fairhurst Co., Inc. (Fairhurst), the owner of the trademark in suit, to cancel its license to the defendant and to issue a license to the plaintiff. Under these circumstances the plaintiff comes into this court with unclean hands. One who seeks equity must do equity. This is a doctrine of special importance in an unfair competition case. The complaint must be dismissed. Federal Trade Commission v. Thomsen-King & Co., 109 F.2d 516, 519 (7th Cir. 1940); E. I. M. Co., Inc. v. Philadelphia Gear Works, Inc., 102 F. Supp. 14 (S.D.Tex.1951); Phi Delta Theta Fraternity v. J. A. Buchroeder & Company, 251 F.Supp. 968, 977 (W.D. Mo.1966); 4 Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 87.1(b), et seq. (3d Ed.).

■ 3. Despite the fact that Fairhurst may have had the right to terminate its license to the defendant, Genison's activities in causing cancellation of that license and in procuring it for his own and plaintiff's benefit constituted unfair competition by the plaintiff with the defendant under New York law for which the defendant is entitled to recover on its counterclaim such damages as it can show it suffered. Duane Jones Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954); Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121 (1st Dept. 1964); American Electronics, Inc. v. Neptune Meter Co., 30 A.D.2d 117, 290 N.Y.S.2d 333 (1st Dept. 1968), appeal after remand, 33 A.D.2d 157, 305 N.Y.S.2d 931 (1st Dept. 1969). Cf., Republic Systems and Programming Inc. v. Computer Assistance, Inc., 322 F.

Supp. 619 (D.Conn.1970), aff'd 440 F.2d 996 (2d Cir. 1971).

■ 4. The award of the arbitrators dated July 11, 1969, holding that the Fairhurst-National licensing agreement was validly terminated is not res judicata as to any issues before this Court.

■ 5. In this exceptional case, in which the action of the plaintiff in bringing suit was in bad faith and unconscionable, the defendant is entitled to recover its reasonable attorneys' fees as an element of its damages. Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Taussig v. Wellington Fund, Inc., 187 F.Supp. 179, 222 (D.Del.1969). General Motors Corp. v. Cadillac Marine & Boat Co., 226 F.Supp. 716, 744 (W.D.Mich.1964); Sperry Rand Corporation v. Rothlein, 241 F.Supp. 549 (D.C.Conn.1964); Haviland & Co., Inc. v. Johann Haviland China Corporation, 269 F.Supp. 928, 933 (S.D.N.Y.1967).

The parties are directed to submit a proposed judgment consonant herewith which shall include provisions to the effect:

(a) that the plaintiff's complaint is dismissed with prejudice;

(b) that the defendant's prayer for relief on its counterclaim is granted to the extent that this Court will appoint a Special Master to determine the amount of the damages for profits lost by the defendant through the wrongful activities of the plaintiff and Jack Genison, including reasonable attorneys' fees;

(c) that the costs of this action, including the costs and expenses of the reference, shall be borne by the plaintiff.