RIVERDALE DEVELOPMENT COMPANY, LLC *v.*
RUFFIN BUILDING SYSTEMS, INC.

03-244 146 S.W.3d 852

Supreme Court of Arkansas
Opinion delivered February 12, 2004

*Kaplan, Brewer, Maxey & Haralson, P.A.*, by: *Philip E. Kaplan*, for appellant.

*Williams & Anderson PLC*, by: *David M. Powell* and *Sarah M. Priebe*, for appellee.

Tom Glaze, Justice. This appeal requires us to determine the preclusive effect of an arbitration award with respect to one who was not a party to the arbitration. Because this is an issue of first impression in this state, our jurisdiction is proper under Ark. Sup. Ct. R. 1-2(b)(1). This is also a subsequent appeal following other appeals decided by this court. *See May Constr. Co. v. Riverdale Develop. Co.*, 345 Ark. 239, 45 S.W.3d 815 (2001); *May Constr. Co. v. Thompson*, 341 Ark. 879, 20 S.W.3d 345 (2000).

On August 30, 1996, appellant Riverdale Development Company ("Riverdale") entered into a contract with May Construction Company ("May") for construction of a commercial office building located at 2102 Brookwood Drive in Little Rock. Included in the project was May's erection of a pre-engineered metal building manufactured by appellee Ruffin Building Systems, Inc. ("Ruffin"), a Louisiana company from which May purchased the materials for construction.

Disputes began arising between May and Riverdale regarding the completion of the project. The contract between May and Riverdale contained a provision requiring arbitration of contract disputes between the parties, and on May 13, 1999, May initiated arbitration with Riverdale pursuant to the construction contract. However, on May 25, 1999, Riverdale filed suit against May in Pulaski County Circuit Court, and one year later, on May 19,

2000, Riverdale filed an amended complaint that also named Ruffin as a defendant. The complaint raised claims of negligence, breach of implied warranties, defective product, and fraud and constructive fraud.

Although Riverdale initially contested arbitration, Riverdale and May eventually arbitrated their dispute in a hearing that lasted from July 22-26, 2002. The arbitrator ultimately ruled in May's favor, finding that May did not materially breach the contract between the parties, and was excused from further performance by Riverdale's wrongful exclusion of May from the project site. Although the arbitrator noted some conflicts in the testimony regarding the alleged defects in the building and the design of the building and its mechanical and structural components, the arbitrator found that May's witnesses were more credible. All of Riverdale's claims were denied in their entirety, and Riverdale was ordered to pay May the balance owing on the contract, plus attorney's fees. The arbitrator's findings were issued on August 8, 2002.

Just prior to the arbitrator's decision, May filed a motion in the circuit court case to dismiss Riverdale's claims against it, arguing that the pleadings in the arbitration case and the circuit court case mirrored each other, and that Riverdale's circuit court claims were barred under *res judicata* and collateral estoppel; the trial court agreed and granted the motion on August 16, 2002. On August 14, 2002, after the arbitrator's decision was issued on August 8, Ruffin filed a motion for summary judgment, contending that there were no genuine issues of material fact, because Riverdale's claims were "barred under the doctrine of collateral estoppel, since all issues material to this case have been fully presented and determined . . . before the American Arbitration Association."

Following a hearing on October 22, 2002, the trial court entered its order granting Ruffin's motion for summary judgment, holding that "a third party such as Ruffin is entitled to rely upon an arbitration award such as [the one] here under the doctrines of collateral estoppel or *res judicata,* even though not a party to the contract providing for arbitration and even though [Riverdale] did not agree to bind itself to an arbitration award with regard to other parties." From this order, Riverdale brings this appeal, raising as its sole point the argument that the trial court erred in granting

summary judgment in favor of Ruffin on the grounds of collateral estoppel based on a finding in an arbitration proceeding to which Ruffin was not a party.

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Craighead Elec. Coop. Corp. v. Craighead County*, 352 Ark. 76, 98 S.W.3d 520 (2003); *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002); *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998).

The questions to be answered in this case are (1) whether collateral estoppel will apply to bar Riverdale's suit against Ruffin, a third party who was not involved in the arbitration, and (2) whether, if collateral estoppel does apply, the elements have been established. Collateral estoppel, or issue preclusion, bars relitigation of issues, law, or fact actually litigated in the first suit. *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993); *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 855 S.W.2d 941 (1993). For collateral estoppel to apply, the following four elements must be met: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) the issue must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment. *Crockett & Brown, supra; Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993). Unlike *res judicata*, collateral estoppel does not require mutuality of parties before the doctrine is applicable. *Id.* (citing *Fisher v. Jones, supra*).

Ordinarily, collateral estoppel is relied upon by a defendant to preclude a plaintiff from relitigating an issue that has previously been decided adversely to the plaintiff. *Johnson v. Union*

*Pacific Railroad*, 352 Ark. 534, 104 S.W.3d 745 (2003). This "defensive collateral estoppel" is the manner in which the doctrine is sought to be applied in the present case. Another form of collateral estoppel, "offensive collateral estoppel," is more controversial, although it has been specifically approved by this court. *See Johnson v. Union Pacific, supra.* Offensive collateral estoppel occurs when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. *Johnson,* 352 Ark. at 545 (citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979)). The *Johnson* court concluded that this rule should be available only in limited cases, and that the trial court should be given broad discretion to determine if it should be applied.

The present case, however, does not involve the use of offensive collateral estoppel; instead, the court is only concerned with the defensive application of the doctrine. On appeal, Riverdale argues that a private arbitration decision should have no collateral estoppel effect in favor of third parties, and that to hold otherwise would defeat principles of fairness and equity and produce unjust results. In making its argument, Riverdale relies primarily on four cases: *Federal Folding Wall Corp. v. National Folding Wall Corp.,* 340 F. Supp. 141 (S.D.N.Y. 1971); *Young v. Metropolitan Prop. & Cas. Ins. Co.,* 758 A.2d 452 (Conn. App. 2000); *Pace v. Kuchinsky,* 789 A.2d 162 (N.J. 2002); and *Vandenberg v. Superior Court,* 21 Cal.4th 815, 982 P.2d 229, 88 Cal. Rptr. 2d 366 (1999).

However, these cases are neither instructive nor applicable here. The first two — *Federal Folding Wall* and *Young* — involve the use of *offensive* collateral estoppel. In *Federal Folding Wall,* National Folding Wall lost a case in arbitration, wherein an arbitrator had determined that National had lost the right to use the trade name "Fairhurst." Subsequent to that decision, Federal sued National, alleging that National had infringed upon Federal's right to use the "Fairhurst" name. In its lawsuit, Federal sought a summary judgment on the basis of the arbitrator's award, but the trial court denied the motion, stating without explanation that "[t]he award of the arbitrators . . . is not *res judicata* as to any issues before the court." *Federal Folding Wall Corp.,* 340 F. Supp. at 146.

In the case of *Young v. Metropolitan Property & Casualty, supra,* the Connecticut court of appeals declined to apply offensive collateral estoppel to bind a non-party to an arbitration to the

results of the arbitration. In that case, the plaintiff, Young, was involved in a car accident. The car he was driving belonged to his employer, and was insured through defendant Metropolitan. Young's own insurance carrier was Continental. Young and Continental engaged in arbitration regarding the amount and availability of underinsured motorist coverage; although the two parties invited Metropolitan to participate in the arbitration, Metropolitan declined. The arbitration proceeding resulted in an award of damages for Young. Following the decision of the arbitrator, Young filed a motion for summary judgment against Metropolitan, arguing that Metropolitan was collaterally estopped from contesting the arbitration award as to damages. The trial court denied his motion. *Young,* 758 A.2d at 454.

■ On appeal, the Connecticut court of appeals affirmed the trial court, holding that there was insufficient privity between Metropolitan and Continental. Specifically, the court noted that, "although both Continental and [Metropolitan] are interested in the same question and in proving or disproving the same set of facts, each has, by separate and distinct contracts, chosen the process to determine those facts using its own preferred method." *Id.* at 456. In addition, the court emphasized the contractual nature of arbitration. The court pointed out that Continental had included an arbitration provision in its insurance contract, but Metropolitan had not; in addition, Metropolitan had also declined to be included in the arbitration between Continental and Young. Finally, the court noted that the interests of the two insurers were different, as were their respective incentives to fully participate in the arbitration proceedings. The court further held that "[a] trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial." *Id.* at 457. Accordingly, the court held that, because Metropolitan had not participated in the prior proceeding, it would be foreclosed from challenging facts already decided against it; thus, Metropolitan did not have a full and fair opportunity to litigate its claim. *Id.* at 458. The *Young* court relied on two factors: 1) Young was seeking to apply collateral estoppel *offensively* in an unfair manner; and 2) there was no privity between Continental and Metropolitan, and Metropolitan was therefore denied the opportunity to litigate the

issue of liability in the prior proceeding.[1] However, this case provides no help to Riverdale for two reasons: first, *Young* involves an offensive use of collateral estoppel, while the present case involves the *defensive* application of the doctrine; and second, unlike Metropolitan in the *Young* case, Riverdale had an opportunity to litigate the issues raised in its proceeding before the arbitrator.

Next, Riverdale relies on *Pace v. Kuchinsky, supra*. In *Pace*, the New Jersey court declined to give preclusive effect to a prior arbitration decision. There, plaintiff/appellant Pace had sustained spinal injuries in a car wreck. Pace sued both the driver of the other car, Kuchinsky, and Pace's own insurer, State Farm, alleging that State Farm had failed to provide certain "personal injury protection" ("PIP") benefits under his policy. Pace eventually dismissed the action against State Farm after State Farm confirmed that there were no medical bills outstanding. Some months later, one of Pace's doctors filed a PIP arbitration claim against State Farm, seeking payment of outstanding medical bills. Pace testified at the arbitration hearing, but did not consider himself as being present "as a party." The arbitrator determined that Pace had failed to prove that his back problems were the result of the accident (as opposed to degenerative changes), and concluded that any medical expenses incurred by Pace after April of 1999 were not State Farm's responsibility. *Pace*, 789 A.2d at 167.

■ A month or so later, Kuchinsky moved to dismiss Pace's claims for back injury, arguing that the issue had been decided in the arbitration proceedings. Although the trial court granted Kuchinsky's motion, the New Jersey Superior Court reversed. In concluding that the trial court erred, the superior court pointed out that Pace had never been informed that the outcome of the arbitration hearing could have a potential effect on his right to have a trial by jury. *Id.* at 169. Further, the court noted that Pace had never had his "day in court" on the specific issue in question. "Unless expressly waived, a full and fair hearing requires

---

[1] The Connecticut court further distinguished the situation in *Young* from another case involving the *defensive* application of collateral estoppel, pointing out that in *Russo v. Allstate Ins. Co.*, 21 Conn. L. Rptr. 140 (1997), the plaintiff had "had a full and fair opportunity to litigate his [prior arbitration] claim." Therefore, "it was fair to preclude him, on the basis of the accepted public policy reason behind collateral estoppel, from relitigating the same issue with a second party." *Young*, 758 A.2d at 548.

representation by the party's own counsel, thereby insuring presentation of the specific issue to be decided in the very manner that the party chooses. [Citation omitted.] This is especially so where the party sought to be precluded was not the identical party in the prior proceeding." *Id.* at 172. Therefore, the New Jersey court held that the scope of the PIP arbitration between the doctor and State Farm was limited to the doctor's claims for payment, and the scope of the issue as presented "neither afforded [Pace] an adequate opportunity to be heard nor an incentive to demand a full and fair adjudication concerning his lumbar injuries and whether his resulting surgery and disability, if any, were causally related to the accident." *Id.* at 173. Again, however, this case is not helpful to Riverdale, primarily because the issues litigated before the arbitrator are the same as those raised in Riverdale's circuit court complaint, and Riverdale *did* have the opportunity to fully and fairly adjudicate its case before the arbitrator.

Finally, Riverdale relies extensively on the California case of *Vandenberg v. Superior Court, supra.* Briefly, the facts of that case were that Vandenberg leased a parcel of property from Boyd and used the land for a car dealership. In 1988, Vandenberg discontinued the leases and returned the property to Boyd. To prepare the property for sale, Boyd removed three underground waste oil storage tanks; in the process, he discovered contamination of soils and groundwater underneath the property. Boyd sued Vandenberg, alleging numerous causes of action including breach of contract, negligence, waste, trespass, and other claims. Vandenberg tendered defense of the suit to his insurers, but many of the policies contained pollution exclusions, under which property damage caused by a pollutant or contaminant was not covered except for a "sudden and accidental" discharge. *Vandenberg,* 982 P.2d at 235.

Of Vandenberg's insurers, only USF&G agreed to provide a defense. During settlement proceedings, Vandenberg, Boyd, and USF&G reached an agreement to resolve the Boyd litigation. Boyd released all claims against Vandenberg except those based on the theory that the contamination constituted a breach of the lease agreement. Boyd and Vandenberg agreed to resolve the breach of lease issues through arbitration or trial. USF&G agreed to defend Vandenberg, but the ultimate issues of coverage and indemnity obligations were specifically reserved for future resolution. *Id.* Following arbitration, the arbitrator ruled for Boyd, finding that the contamination was not a "sudden and accidental" discharge.

Vandenberg's insurers rejected Vandenberg's request for indemnification, and he then sued his insurers for failure to defend. *Id.* USF&G responded, arguing that it had no duty to defend because the discharges were not sudden and accidental; USF&G further contended that further litigation regarding the "sudden and accidental" issue was precluded by principles of collateral estoppel. The trial court granted USF&G's motion for summary judgment, but the California court of appeals reversed. *Id.* at 236.

Upon review by the Supreme Court of California, the court held that a private arbitration award cannot have nonmutual collateral estoppel effect unless the arbitral parties so agree. In reaching this decision, the court considered all the attendant public policy arguments on both sides of the issue, and concluded that fairness mandated that collateral estoppel could not be invoked by a nonparty to the prior litigation. The court noted that California's statutory scheme, while favoring arbitration in some instances, "nowhere specifies that, despite the arbitral parties' failure to so agree, a private arbitration award may be binding in favor of *nonparties* in litigation involving *different* causes of action." *Id.* at 239 (emphasis in original). Notably, the California court said, arbitrators, "unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim *that a party might successfully have asserted in a judicial action.*" *Id.* (emphasis in original). The "informal and imprecise nature of arbitration," although an advantage in some instances, "can be [a] serious, unexpected disadvantage[] if issues decided by the arbitrator are given leveraged effect in favor of strangers to the arbitration." *Id.* The court also noted that investing an arbitration decision with collateral estoppel effect does not serve the policy reasons for applying the principles of estoppel:

> [T]he primary purposes of collateral estoppel are to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation. But because a private arbitrator's award is *outside* the judicial system, denying the award collateral estoppel effect has no adverse impact on judicial integrity. Moreover, because private arbitration does not involve the use of a judge and a courtroom, later relitigation does not undermine judicial economy by requiring duplication of judicial resources to decide the same issue. Finally, when collateral estoppel is invoked by a *nonparty* to the private arbitration, the

doctrine does not serve the policy against harassment by vexatious litigation. In such cases, the doctrine is asserted not to protect one who has already once prevailed against the same opponent on the same cause of action, but simply to gain vicarious advantage from a litigation victory *won by another.*

*Id.* at 240 (citations omitted; emphasis in original).

The California court did recognize, however, that "most other courts addressing the issue, have taken a contrary approach." *Id.* The court wrote that the predominant view is as follows:

[U]nless the arbitral parties agreed otherwise, *a judicially confirmed private arbitration award will have collateral estoppel effect, even in favor of nonparties to the arbitration,* if the arbitrator actually and necessarily decided the issue sought to be foreclosed and the party against whom estoppel is invoked has full incentive and opportunity to litigate the matter.

*Id.* (emphasis added). The court ultimately concluded, however, that it would not adopt this approach.

 Riverdale, both before this court and in the trial court, relies heavily on the policy arguments addressed by the California court. However, the trial court here recognized that the California approach is the minority view, and declined to follow it. We do the same. Arkansas has recognized and approved the defensive application of collateral estoppel, even where there is no mutuality of parties. *See Fisher v. Jones, supra.* Further, it is settled that, except in certain limited situations, "a valid and final award by arbitration has the same effects under the rules of *res judicata,* subject to the same exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments § 84 (1982). The comments to § 84 of the Restatement indicate that "there is good reason to treat the determination of the issues in an arbitration proceeding as conclusive in a subsequent proceeding, just as determinations of a court would be so treated." *Id.*, cmt c. The comment explains as follows:

When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has. Economies of time and

effort are thereby achieved for the prevailing party and for the tribunal in which the issue subsequently arises.

*Id.*

Other jurisdictions have adopted and followed this reasoning. In *Ray v. Continental Western Ins. Co.*, 920 F. Supp. 1094 (D. Nev. 1996), the district court held that, where the party to be estopped had an opportunity to, and did, fully and fairly litigate the issue before the arbitrator, the decision of the arbitrator should be given preclusive effect in a subsequent judicial proceeding. There, the Rays were covered by a policy of automobile insurance issued by Continental. Mrs. Ray was involved in a car accident with Regina Elliff. The Rays sued Elliff for negligence in state court, but the parties agreed to submit the case to binding arbitration. After an adversarial hearing, the arbitrator found that Elliff was liable for the accident, and awarded the Rays a total of $17,123 in damages. *Ray*, 920 F. Supp. at 1097. The Rays subsequently sued Continental for underinsured motorist benefits, claiming a total of $135,260 in damages. Continental moved for summary judgment, arguing that the arbitrator's decision as to the Rays' damages was conclusive, and the Rays were not entitled to any underinsured benefits under the policy. *Id.*

The federal district court agreed, stating that it was evident that the Rays had an opportunity to fully litigate their claims before the arbitrator. The parties presented witnesses, deposition testimony, medical reports, and other exhibits, and they contested damages as well as liability. Further, the court noted that the arbitrator had considered the Rays' arguments regarding the amount of their damages, and had awarded damages for medical expenses, pain and suffering, and loss of consortium. *Id.* at 1098. Because the same issues had already been fully and fairly litigated, the court granted the arbitrator's decision preclusive effect, and granted Continental's motion for summary judgment. *Id.*

Likewise, in *Bailey v. Metropolitan Property & Liability Ins. Co.*, 505 N.E.2d 908 (Mass. App. Ct. 1987), the Appeals Court of Massachusetts relied on § 84 of the Restatement and held that the plaintiff was barred from recovery under principles of issue preclusion. The plaintiff in that case, Bailey, was a passenger in a car when he was injured in a wreck, and he received the limits of the car owner's personal injury protection, medical payment coverage, and optional bodily injury coverage. The insurer, Allstate, refused to pay Bailey any of the $10,000 available under the owner's

underinsurance coverage. Bailey and Allstate went to arbitration on the issue, and the arbitrator awarded Bailey $7,500. *Bailey*, 505 N.E.2d at 909.

Later, Bailey sued Metropolitan (which insured Bailey's own vehicle), seeking payment under the underinsurance provisions in the Metropolitan policy. Metropolitan denied the claims on the grounds that the arbitrator's award precluded Bailey from further pursuing the issue of damages. Although the trial court ruled in Metropolitan's favor on another issue, the Massachusetts appellate court affirmed on the basis of issue preclusion, noting first the following:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.

*Id.* at 910 (citing *Montana v. United States*, 440 U.S. 147 (1979)).

Like Arkansas, Massachusetts does not require an identity of defendants for issue preclusion to operate. *Id.* Thus, the *Bailey* court noted, the inquiry was simply "whether the issue on which preclusion is sought has been the product of full litigation and careful decision." *Id.* Citing Restatement § 84 and its comment, the Massachusetts court further stated that it saw "no reason why the rule should not extend as well to a defendant who was not a party to the earlier arbitration if the plaintiff had a full and fair opportunity in the arbitration to litigate the issue, and if equitable considerations otherwise warrant precluding relitigation." *Id.* (internal brackets and quotation marks omitted).

We are persuaded by the reasoning of the Massachusetts court, and we hold that a party not involved in a prior arbitration may use the award in that arbitration to bind his opponent if the party to be bound, or a privy, was before the arbitrator, had a full and fair opportunity to litigate the issue, and the issue was actually decided by the arbitrator or was necessary to his decision.

Thus, we must now determine whether these elements have been satisfied in the case before us. Clearly, Riverdale, as the party to be bound, was before the arbitrator. The hearing

before the arbitrator lasted for five days, during which time both Riverdale and May put on extensive testimony and other evidence. The issues raised and addressed in the arbitration proceedings were the same as those alleged in the circuit court complaint. In its lawsuit against May and Ruffin, Riverdale made numerous allegations against both defendants. Notably, Riverdale listed seventeen specific structural deficiencies and defects that it had noted and reported "to the defendants May *and* Ruffin." In addition, as noted above, the complaint asserted causes of action in negligence, breach of implied warranties, defective product, and fraud against both May and Ruffin. Further, the arbitrator's award itself stated that there was conflicting evidence and testimony about the design of the building and its mechanical and structural components. The arbitrator resolved these conflicts in the testimony and evidence in May's favor, and concluded that there was "no credible evidence of Riverdale's damages for repairs or for the cost of correcting defects. As a result, Riverdale [was] not entitled to an award of . . . damages." Thus, it is apparent that Riverdale was before the arbitrator, had a full and fair opportunity to litigate the issues it raised, and those issues were actually decided by the arbitrator and were necessary to the decision. Therefore, we have no hesitancy in holding that the trial court properly concluded that Riverdale was collaterally estopped from further litigating these same issues against Ruffin.

Affirmed.