**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 13 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

GARY WORTHINGTON;
COLLEEN WORTHINGTON,

      Plaintiffs-Appellants,

v.

ROBERT MICHAEL ANDERSON;
ROBERT HENRY ANDERSON;
KNEADERS BAKERY, LC; BAKERS
#1, LC; KNEADERS (HEBER CITY);
KNEADERS #1; BAKERS #2, LC;
KNEADERS (PAYSON); BAKERS
#3, LC; KNEADERS (AMERICAN
FORK); BAKERS #4, LC;
KNEADERS (DRAPER),

      Defendants-Appellees.

No. 03-4233

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. No. 2:01-CV-554-TC)

Submitted on the briefs:

Stephen Quesenberry and J. Bryan Quesenberry of Hill, Johnson & Schmutz, L.C.,
Provo, Utah, for Plaintiffs-Appellants.

John P. Ashton and James W. McConkie III of Prince, Yeates & Geldzahler,
Salt Lake City, Utah, for Defendants-Appellees.

Before **HARTZ**, **McKAY**, and **PORFILIO**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

In this appeal, we consider the scope of the "unclean hands" defense to an action for trademark infringement. [1] Appellants Gary Worthington and Colleen Worthington appeal from the district court's order dismissing, after a bench trial, their action against the defendants for federal and common law trademark infringement, deceptive trade practices, misrepresentation and false designation of origin under the Lanham Act, and conspiracy. [2] The district court concluded that the Worthingtons' claims against the defendants (referred to collectively here as the "Andersons") were barred by the equitable doctrine of unclean hands. We affirm.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] The district court analyzed only the trademark claim. The Worthingtons contend that they prevailed on the merits of all their claims, prior to application of the unclean hands defense. Aplt. Opening Br. at 8. The parties appear to assume that the unclean hands defense, if successful, would bar all of the Worthingtons' claims.

FACTS

In 1997, the Andersons and the Worthingtons began operating bakery/cafes in several Utah locations under the name "Kneaders." To manage these bakery/cafes, the Andersons (acting through HMA, L.C.) and the Worthingtons (acting through APB Investments, L.C.) formed Kneaders, L.C., a Utah limited liability company.

Disputes arose between the parties. Their business relationship began to deteriorate. By June 1999, the Andersons and the Worthingtons were operating the various Kneaders establishments separately. The Worthingtons operated the Kneaders in Orem, Utah. The Andersons operated a number of Kneaders establishments in other Utah locations.

The operating agreement for Kneaders, L.C. provided that disputes between the parties would be submitted to final and binding arbitration. Aplt. App. at 162. In November 2000, the parties agreed to an arbitration to dissolve the Kneaders business and to determine how to divide its assets and liabilities. The parties participated in an arbitration proceeding to this end, and on January 1, 2001, the arbitrator issued an award.

**Kneaders trade name**

One of the issues in the arbitration was the allocation of the name "Kneaders." In 1999, Michael Anderson had obtained trademark registration for

"Kneaders" in his own name.  He did not disclose this action to the Worthingtons.  The arbitrator found that the name "Kneaders" was an asset of Kneaders, L.C.  He further found that it was not practical to split the use of the name between the Andersons and Worthingtons.  He therefore assigned the name "Kneaders" to the Worthingtons.

On March 27, 2001, the arbitrator issued a second award to resolve further issues between the parties.  In the award, he directed the Andersons to execute immediately documents relinquishing their trademark rights to the name "Kneaders."

On June 28, 2001, a state district court entered an order confirming both arbitration awards.  On that date, Michael Anderson signed a document relinquishing all right to the trademarks.  On July 13, 2001, Kneaders L.C. assigned the trademark to the Worthingtons.  The Worthingtons subsequently obtained registration from the United States Patent and Trademark Office for the "Kneaders" trademark.

**Assignment of the commissary**

The Kneaders trademark was only one of the issues addressed by the arbitrator's awards.  The arbitrator also required the Worthingtons to assume and pay certain loans (the Wells Fargo loan; the store equipment lease loan) on which the Andersons were guarantors.    *Id.* at 166.

In addition, the arbitrator resolved the ownership of the Orem property, which encompassed a second structure, the commissary used to bake the products sold at the parties' stores. The arbitrator awarded the commissary to the Andersons and instructed the Worthingtons to deed the Orem land underlying the commissary to them by quit claim deed by June 1, 2001. Until the deed was completed, the Andersons were to pay the Worthingtons $1,000 per month as rent.

Sometime during the first two months of 2001, the Andersons contacted Mark Greenwood, a civil engineer, to conduct a survey for the purpose of dividing the Orem property. In June 2001, Gary Worthington called Greenwood and told Greenwood that he was the owner of the property and that Greenwood was to stop all attempts to survey the property.

On June 25, 2001, Gary Worthington gave the Andersons a quit-claim deed to their portion of the Orem property. When Marc Greenwood examined the deed, he discovered that it purported to convey two parcels not owned by Worthington: a parcel owned by the city of Orem, and a parcel to the south of the property that Worthington also did not own. The district court found that this erroneous legal description was not the result of an oversight or mistake by Worthington. *Id.* at 231.

Further disputes ensued, leading to further arbitration awards. The arbitrator ultimately ordered the Andersons to sell the commissary to the Worthingtons.

**Andersons' financial difficulties**

The period of time following the arbitrator's January 2001 award was a difficult one financially for the Andersons. Their establishments were losing money. Because the property on which the commissary was located had not yet been divided, the Andersons were obligated to pay the Worthingtons $1,000 per month as lease payments. Additionally, the Worthingtons had not paid the Andersons' outstanding loan from Wells Fargo, hampering the Andersons' ability to obtain financing. The district court found that the Andersons' failure to comply timely with the arbitrator's order to stop using the "Kneaders" trademark was due in large part to the Worthingtons' delay in fulfilling financial obligations and cooperating in the division of the property. *Id.* at 232.

**District court's determination**

The Worthingtons instituted this suit on July 17, 2001, charging that the Andersons were still using the Kneaders name on their establishments. Testimony was presented that although the Andersons took down or partially covered the large outside Kneaders signs on most of their stores in July 2001, they continued

to employ the Kneaders name to some extent into the fall of 2001 on menus, order forms, and advertising materials.

After a bench trial, the district court concluded that although the Worthingtons had established the necessary factors to prove a case of trademark infringement, they were barred by the doctrine of unclean hands from receiving any form of relief. Specifically, the court reasoned:

> Neither the Worthingtons nor the Andersons complied in good faith with their obligations under the arbitration awards. The Andersons contend, and the evidence supports their contention, that they continued to use the Kneaders trademark because of their deteriorating financial situation. Gary Worthington's failure to fully and timely comply with his obligations under the arbitration awards was a major cause of the Andersons' financial problems. The Andersons could not buy new signs, change their advertising, or generally begin their new business until they owned the property and Gary Worthington paid the Wells Fargo loan.

*Id.* at 238.

The district court dismissed the Worthingtons' complaint. This appeal followed.

## ANALYSIS

The Worthingtons raise a number of arguments in opposition to the district court's dismissal of their complaint. Most of their issues clearly lack merit. We will deal with these issues quickly, so as to arrive at the only real and difficult

issue in this case: whether the Worthingtons' alleged unclean hands sufficiently relates to the trademark infringement to serve as a defense to it.

### 1. Collateral estoppel

The Worthingtons contend that collateral estoppel bars the Andersons' defense of unclean hands. They argue that the Andersons raised the unclean hands defense in the arbitration proceeding and that it was rejected by the arbitrator. The arbitrator's award was then confirmed by the state district court, creating a disposition that the Worthingtons argue is entitled to full faith and credit in this action. *See* 28 U.S.C. § 1738 (stating that state court judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State."). Leaving aside the question of whether the unclean hands defense was actually presented to or decided by the arbitrator in a fashion entitling it to preclusive effect in this action,[3] the Worthingtons have waived their collateral estoppel issue by failing to raise it before the district court.[4] *Monreal v. Potter*, 367 F.3d 1224,

---

[3] This point is a matter of some dispute and difficulty here, particularly since the arbitrator specifically excluded trademark infringement issues from his awards. *See* Aplt. App. at 205.

[4] Worthingtons contend that they did raise this issue before the district court. *See* Aplt. Opening Br. at 1; Reply Br. at 1. None of their record references bears this out, however. They argued to the district court that the arbitrator's award was binding on the issue of ownership rights to the "Kneaders" name. *See* Aplt. App. at 35-37, 53-61. They asked for an order in limine prohibiting any

(continued...)

-8-

1231 (10th Cir. 2004). We therefore reject this argument as a bar to the district court's application of the unclean hands doctrine.

### 2. *Rooker/Feldman*

The Worthingtons next claim that the Andersons' assertion of unclean hands is barred by the *Rooker/Feldman* doctrine. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414-16 (1923). *Rooker/Feldman* typically is employed to bar an action by the loser in state court seeking review in federal court. *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002). The Worthingtons, however, arguably the "winners" on the point they wish to assert from the arbitration, are the driving force behind this federal court trademark action. Their argument about the preclusive effect of arbitration proceedings is therefore better characterized as a collateral estoppel argument, not a *Rooker/Feldman* argument.

There may be a tactical consideration involved with this attempt to drive the square peg of *Rooker/Feldman* into the round hole reserved for collateral estoppel. As we have seen, the Worthingtons' collateral estoppel argument is

---

[4](...continued)
discussion of the arbitrator's award on other issues. *Id.* at 63-65. There was testimony at trial about the arbitrator's decision on the property division issues. *Id.* at 109-11, 132-33. In none of these cases, however, did the Worthingtons raise to the district court the collateral estoppel issue they now seek to raise on appeal.

barred in this court by their failure to raise it in the district court. They admit that they also failed to raise their *Rooker/Feldman* argument prior to this appeal. *Rooker/Feldman*, however, is jurisdictional, and may be raised at any time. *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 705-06 (10th Cir. 2004), *pet. for cert. filed* (U.S. May 6, 2004). Even if the Worthingtons are permitted a belated assertion of *Rooker/Feldman* here, however, the doctrine does not bar application of the unclean hands defense in this case.

The *Rooker/Feldman* doctrine protects state court judgments from review by federal courts other than the United States Supreme Court. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074-75 (10th Cir. 2004). We apply *Rooker/Feldman* both to those federal claims that were actually decided by a state court, and to those inextricably intertwined with a state court judgment. *Id.* at 1075. The trademark claim in this case, and the unclean hands defense asserted by the Andersons, do not meet either of these criteria. They were not actually decided by a state court: the arbitrator refused to address trademark issues and there is no evidence that the state court addressed them when it confirmed his award. Nor were the trademark issues inextricably intertwined with the arbitrator's confirmed decision; the arbitrator's decision, in and of itself, created neither the trademark issues raised by the Worthingtons nor the unclean hands defense raised by the Andersons. *Id.* at 1076 (stating that "inextricably

-10-

intertwined" standard asks "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.") (quotation omitted). We therefore reject Worthingtons' *Rooker/Feldman* argument.

### 3. The Worthingtons' " *tu quoque* " argument [5]

The Worthingtons next argue that the Andersons are estopped on equitable grounds from asserting unclean hands as a defense. The Worthingtons reason as follows:

"Unclean hands" is an equitable defense. An important equitable maxim provides that "he who seeks equity must do equity." It follows that a person who has behaved inequitably cannot assert unclean hands. The Andersons have behaved inequitably by violating the Worthingtons' trademark, by failing to relinquish promptly the trademark to Worthingtons as ordered by the arbitrator, and by supporting others' infringing uses of the trademark. Therefore, they may not assert the unclean hands defense.

If this argument barred the application of the "unclean hands" doctrine, then the defense would be unavailable to a defendant, so long as the plaintiff could prove up his case for trademark infringement. That is not the law, however.

---

[5] "*tu quoque* (lit. "you also") = a retort in kind; accusing an accuser of a similar offense." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 893 (2d ed. 1995).

The key defect in the Worthingtons' argument lies in their confusion of an equitable maxim that requires a plaintiff to behave equitably ("he who seeks equity must do equity") with a defense available to a defendant who has behaved inequitably ("unclean hands"). The difference between these doctrines is significant:

> In applying the maxim, He who seeks equity must do equity, as a general rule regulating the action of courts, it is necessarily assumed that different equitable rights have arisen from the same subject-matter or transaction, some in favor of the plaintiff and some of the defendant; and the maxim requires that the court should, as the price or condition of its enforcing the plaintiff's equity and conferring a remedy upon him, compel him to recognize, admit, and provide for the corresponding equity of the defendant, and award to *him* also the proper relief. . . . On the other hand, the maxim, . . . He who comes into equity must come with clean hands, . . . assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him  *all* recognition and relief with reference to the subject-matter or transaction in question.

2 John Norton Pomeroy & Spencer W. Symons,  *A Treatise on Equity Jurisprudence*  § 397, at 91 (5th ed. 1994) (emphasis in original).

The doctrine of "unclean hands" in trademark cases is designed "to protect the court from granting relief to a plaintiff no better than the defendant he is suing." 5 J. Thomas McCarthy,  *McCarthy on Trademarks & Unfair Competition*  § 31:45, at 31-92.3 (4th ed. 2004). Use of the doctrine in the manner contended for by the Worthingtons would defeat its purpose, which is to "close[] the doors of a court of equity to one tainted with inequitableness or bad faith relative to the

matter in which he seeks relief, however improper may have been the conduct of the defendant." *Id.* at 31-92.4 (quotation omitted). We conclude that the Andersons' own misconduct does not bar the assertion of the unclean hands defense. [6]

### 4. District court's factual finding concerning Wells Fargo loan

As part of the factual underlay for its unclean hands determination, the district court determined that the Worthingtons had failed to pay the Wells Fargo loan on which the Andersons were guarantors, making it more difficult for the Andersons to obtain financing. The Worthingtons challenge this finding on factual grounds. [7] The Worthingtons have not supplied us with an adequate and complete record on this issue, however, which involves a factual dispute. We must therefore accept the district court's finding as correct. *See, e.g., Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 976 (10th Cir. 1991).

---

[6] Some decisions require a defendant seeking to assert "unclean hands," to establish that his own misconduct did not outweigh that of the plaintiff, or that the public interest would not be harmed by application of the doctrine. *See Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 350 (9th Cir. 1963). The Worthingtons do not argue for such a weighing here, however; they simply assert that the Andersons are completely barred from relying on the doctrine by their own unclean hands.

[7] The Worthingtons also contend that the Andersons' financial difficulties are irrelevant to their ability to cease infringing behavior. Aplt. Opening Br. at 28-29. Given the district court's disposition of this case, this argument is relevant only to the question of whether the Andersons' financial difficulties could legitimately be considered part of the "unclean hands" determination, the question we undertake in the final section of this opinion.

-13-

**5.  Relation of Worthingtons' inequitable conduct to their trademark claim**

We have now arrived at the key issue in this case: whether the Worthingtons' allegedly inequitable conduct is sufficiently related to the substance of their trademark claim to give rise to an "unclean hands" defense. This issue is significant because the "unclean hands" doctrine does not empower a court of equity to deny relief for any and all inequitable conduct on the part of the plaintiff.  Instead, the inequitable conduct must be related to the plaintiff's cause of action.    *McCullough Tool Co. v. Well Surveys, Inc.*    , 395 F.2d 230, 238 (10th Cir. 1968).

Historically, courts have recognized two types of "related conduct" that will permit application of the unclean hands doctrine in a trademark case.  The first involves inequitable conduct toward the public, such as deception in or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief. *See, e.g., Clinton & Worden v. Cal. Fig Syrup Co.*    , 187 U.S. 516, 528 (1903). That kind of conduct is not at issue here.

The second type of related conduct arises when the plaintiff has acted inequitably toward the defendant in relation to the trademark.  As a leading treatise explains:

> The maxim [of "unclean hands"], considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected to the matter in litigation, and with which the opposite party has no concern.

5 Pomeroy & Symons, *supra*, § 399, at 94-95. *See also id.* § 402b at 124-25;

5 McCarthy, *supra* §§ 31:48 - 31:51, at 31-95 to 31-102.

That is the type of unclean hands at issue here. An illustration of how unclean hands can develop from equitable relations between the parties is *Federal Folding Wall Corp. v. National Folding Wall Corp.*, 340 F. Supp. 141 (S.D.N.Y. 1971). The licensee of a trademark brought an action for trademark infringement against the trademark's former licensee. The plaintiff was a corporation, formed by a former employee of the defendant who, in violation of a non-compete agreement, arranged for the trademark's licensor to withdraw the mark from the defendant and award it to the plaintiff. The former employee had engaged in a scheme to prevent the defendant from achieving the required minimum sales under its licensing agreement so the defendant would lose the license and plaintiff could obtain it. The district court denied relief because the plaintiff's own machinations had prevented the defendant from meeting the conditions of its licensing agreement and hence from preserving its own right to use the trademark.

The complaint was dismissed because the plaintiff came into court with unclean hands. *Id.* at 146.

Another case illustrating this principle, this time in the patent law context, is *Saudi Basic Industries Corp. v. Exxonmobil Corp.*, 194 F. Supp. 2d 378 (D.N.J. 2002), *vacated in part on other grounds*, 364 F.3d 102 (3d Cir. 2004), *petition for cert. filed* (U.S. Jun. 22, 2004). The plaintiff brought an action for patent infringement. The district court refused to strike the defendant's unclean hands defense, even though (1) it was based on the plaintiff's alleged overcharging of royalties to a joint venture formed between plaintiff and a subsidiary of defendant, and (2) the royalty payments were governed by an agreement separate from the one under which the patent infringement claim had been raised. The district court reasoned that

> there is a close enough relationship between the inequitable conduct and the claims in the lawsuit to give [defendant] the opportunity to assert the defense. . . . The allegation by [defendant] that [plaintiff] has overcharged the joint venture in violation of the Joint Venture Agreement is conduct related to the breach of the same Joint Venture Agreement. [Plaintiff's] alleged unclean hands in overcharging the joint venture . . . are directly relevant to its effort . . . to invoke this Court's equitable powers and enforce obligations supposedly owed by [defendant]. This alleged conduct by [plaintiff] could be considered unconscionable conduct that permeates the transaction as a whole.

*Id.* at 392.

In the present case, neither party has behaved equitably. Repeated decisions by the arbitrator were necessary to settle the issues in dispute. Prior to the arbitrator's rulings, both parties had legitimate use of the "Kneaders" trademark and had invested in signs, menus and printed materials bearing that name. It should have been obvious that the Andersons would incur considerable expense in divesting themselves of the trademark. Their economic ability to comply with the arbitrator's decision was therefore crucial. The Worthingtons threw economic obstacles in the way of the Andersons' compliance with the arbitrator's decision awarding the trademark to the Worthingtons.

The Worthingtons argue that the cost of compliance is irrelevant to the issue of whether the Andersons violated the trademark. We disagree. Where a plaintiff interferes with the defendant's ability to comply with his or her responsibilities, a court of equity will not turn a blind eye to the net effect on the parties' equitable relationship. *See Fed. Folding Wall* Corp., 340 F. Supp. at 146; *cf. J Bar H, Inc. v. Johnson*, 822 P.2d 849, 861-62 (Wyo. 1991) (rejecting, on equitable grounds, plaintiff's case for breach of non-compete clause where defendant had been shut out of participation in jointly-held corporation). We conclude that the conduct cited by the district court was sufficiently related to the trademark case to justify the application of the unclean hands doctrine, and that the doctrine was properly applied.

-17-

The judgment of the district court is AFFIRMED.