LEROY J. YOUNG *v.* METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY
(AC 18202)

Lavery, Landau and Hennessy, Js.

Argued October 25, 1999—officially released September 26, 2000

*Walter Bansley*, with whom, on the brief, was *Roger Sullivan*, for the appellant (plaintiff).

*Frederick L. Murolo*, with whom were *Karen T. Gerber* and, on the brief, *Marc J. Ubaldi*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, LeRoy J. Young, appeals from the decision of the trial court denying his motion

for summary judgment and sustaining the objection to the plaintiff's motion for summary judgment by the defendant, Metropolitan Property and Casualty Insurance Company.[1] The plaintiff claims that the trial court improperly denied his motion for summary judgment on the basis of its finding that there was no privity between the defendant and Continental Insurance Company (Continental). The defendant, in turn, contends that this appeal should be dismissed because the trial court's denial of summary judgment in this case is not a final judgment from which an appeal may be taken.[2] We affirm the trial court's denial of the plaintiff's motion for summary judgment.

The court found the following facts. On September 12, 1991, the plaintiff, while driving an automobile owned and insured by his employer, was involved in an accident. The vehicle the plaintiff was driving was insured by Continental, which, under its policy, provided $1 million in underinsured-uninsured motorist benefits. The plaintiff, at the time of the accident, maintained an insurance policy with the defendant for two

---

[1] The defendant filed its own motion for summary judgment and *objection to the plaintiff's motion for summary judgment.* The defendant claimed that "there are no genuine issues as to any material facts and the . . . defendant is entitled to judgment as a matter of law based upon the fact that the plaintiff has failed to exhaust the coverage of the primary uninsured-underinsured insurance coverage and therefore has no viable uninsured-underinsured motorist claim against [the defendant]. Additionally, the defendant is not collaterally estopped from litigating any of the underlying facts surrounding the automobile accident giving rise to this claim." The trial court, in its memorandum of decision and judgment purported to grant the defendant's motion for summary judgment on the issue of collateral estoppel. The court was, however, essentially sustaining the defendant's objection to the plaintiff's motion for summary judgment.

[2] The defendant also contends that the trial court was correct in denying the plaintiff's motion for summary judgment because the defendant has a constitutional right to a jury trial. Because we agree with the trial court that no privity exists between Continental, the insurer of the vehicle being operated by the plaintiff, and the defendant, we need not address this alternate ground.

vehicles that he owned. The defendant's policy provides underinsured-uninsured coverage of $100,000 per vehicle and, due to intrapolicy stacking allowed at the time of the accident[3] where as here a separate premium is paid for each of the two vehicles, avails the plaintiff a total of $200,000 in excess coverage. The Continental policy is primary pursuant to the parties' insurance contracts and the then existing underinsured-uninsured law. The tortfeasor had $100,000 in liability insurance coverage that was paid to the plaintiff.

The plaintiff, whose damages exceeded the policy limits recovered from the tortfeasor and the amount available pursuant to the underinsured motorist coverage provision of the Continental policy, filed a complaint against the defendant, seeking to recover the aggregate of the uninsured-underinsured policy coverage on each of the automobiles covered by the defendant. The plaintiff, pursuant to the terms of the Continental policy, also initiated arbitration proceedings against Continental to recover underinsured benefits. Although the defendant's policy did not have an arbitration provision, the plaintiff, by letter, on three separate occasions, invited the defendant to join in the arbitration. The defendant declined.

The arbitration proceeding between the plaintiff and Continental produced a finding and award of damages in the amount of $1,150,000, which, because of setoffs and credits, was reduced to $762,850. As a result of the arbitration panel decision, the plaintiff filed his motion for summary judgment against the defendant, arguing that because of intrapolicy stacking, the defendant, as an excess carrier, is required to provide him with underinsured motorist coverage; that the setoffs and credits decided by the arbitration panel were correctly allo-

---

[3] Stacking is no longer allowed pursuant to the enactment of No. 93-297, § 1, of the 1993 Public Acts, now codified as General Statutes § 38a-336 (d).

cated to the primary insurer Continental; and that the defendant is collaterally estopped from contesting the arbitration award as to damages.

The court denied the plaintiff's motion for summary judgment. The trial court found that, as a matter of law, because there is no privity between the defendant and Continental, the defendant is not collaterally estopped from contesting the decision of the arbitration panel. This appeal followed.

We begin by stating our standard of review on appeal. "The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554, 707 A.2d 15 (1998); *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 5–6, 698 A.2d 795 (1997); see Practice Book § 384, now Practice Book (1998 Rev.) § 17-49." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 743, 714 A.2d 649 (1998).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the trial court rendered judgment [against the plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that

appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995)." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

As a preliminary matter we must decide whether this appeal should be dismissed for lack of a final judgment. The defendant raised this issue previously in its motion to dismiss the plaintiff's appeal, which motion this court denied on June 3, 1998.

"The denial of a motion for summary judgment is not ordinarily appealable because it is not a final judgment. See *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 34, 694 A.2d 1246 (1997)." *Milford* v. *Andresakis*, 52 Conn. App. 454, 455 n.1, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999). Our Supreme Court has held, however, that an appeal may be taken from the denial of a motion for summary judgment when such motion raises the defense of collateral estoppel. *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 194–95, 544 A.2d 604 (1988). The court viewed the defense of collateral estoppel as "a civil law analogue to the criminal law's defense of double jeopardy, because both invoke the right not to have to go to trial on the merits." Id., 195. In the present case, the plaintiff's motion for summary judgment is founded on a claim of *offensive*, as opposed to defensive, collateral estoppel. Nonetheless, we can see no reason why an immediate appeal may not also be taken from the denial of such a motion. For purposes of our jurisdiction to entertain this appeal, we view the distinction between offensive and defensive collateral estoppel as inconsequential. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303 n.19, 596 A.2d 414 (1991). If the plaintiff is correct that the defendant is bound by the decision of the arbitration panel with regard to the question of damages, it would be unfair

to require the plaintiff to expend its resources relitigating this issue. See *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, supra, 194. Appellate review in this case is therefore appropriate.

The plaintiff's primary argument is that the defendant should be collaterally estopped from contesting the decision of the arbitration panel because it is in privity with Continental. " 'The [doctrine] of . . . collateral estoppel protect[s] the finality of judicial determinations, conserve[s] the time of the court, and prevent[s] wasteful relitigation. . . . Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit.' *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 401–402, 546 A.2d 284 [(1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989)]; see also *State* v. *Ellis*, 197 Conn. 436, 462–67, 497 A.2d 974 (1985); *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 313–18, 460 A.2d 1277 (1983); *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 509–10, 545 A.2d 579 (1988)." *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988). "[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 239, 597 A.2d 807 (1991). *Weiss* v. *Statewide Greivance Committee*, 227 Conn. 802, 818, 633 A.2d 282 (1993). . . . [T]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. *Aetna Casualty & Surety Co.* v. *Jones*, [supra, 220 Conn. 297]. *Crochiere* v. *Board of Education*, [227 Conn. 333, 345, 630 A.2d 1027 (1993)]." (Internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 812, 695 A.2d 1010 (1997). Issue preclusion, or collateral estoppel " 'express[es] no more than the fundamental principle that once a

matter has been fully and fairly litigated, and finally decided, it comes to rest.' *State* v. *Ellis,* [supra, 465]." *Mazziotti* v. *Allstate Ins. Co.,* supra, 813.

In this case, to extend the concept of collateral estoppel to preclude the defendant from contesting the arbitration award, we must determine whether privity exists between the defendant and Continental. "Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party. *State* v. *Fritz,* 204 Conn. 156, 172, 527 A.2d 1157 (1987); *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 161, 454 A.2d 1258 (1983); *State* v. *Wilson,* 180 Conn. 481, 486, 429 A.2d 931 (1980). While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. *State* v. *Fritz,* supra, 173." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones,* supra, 220 Conn. 303–304. "There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion. *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.,* 236 Conn. 863, 868, 675 A.2d 441 (1996)." *Mazziotti* v. *Allstate Ins. Co.,* supra, 240 Conn. 813–14.

This is a case where although both Continental and the defendant are interested in the same question and in proving or disproving the same set of facts, each has, by separate and distinct contracts, chosen the process to determine those facts using its own preferred method. "The commonality of interest in 'proving or disproving the same facts' is not enough to establish privity. *State* v. *Fritz*, supra, 204 Conn. 173." *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 817. Continental, through its separate and distinct contract with the plaintiff, chose to settle its disputes by arbitration. On the other hand, the defendant, in its contract with the plaintiff, chose not to bind itself to settle claims through arbitration and, in this case, wants to exercise its contract right to litigate the claim.

The defendant's rights and those of Continental arise from separate contracts, each with its own provision specifying the forum for dispute resolution. Therefore, there can be no privity because the same legal rights are not involved. Clearly, the defendant's rights cannot be unilaterally usurped by the plaintiff by the mere invitation to participate in arbitration when its contract provides it the right to litigate its claims. By arguing that the defendant was invited to participate in the arbitration and that its decision to decline that invitation, based on its contract rights, should expose it to liability from which it is collaterally estopped from contesting, urges us to disregard the contractual rights for which one party bargained.

"Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 488, 439 A.2d 416 (1981), and cases cited therein. Even though it is the policy of the law to favor settlement of disputes by arbitration; *Board of Education* v. *Waterbury Teachers' Assn.*, 174 Conn. 123, 126, 384 A.2d 350 (1977); arbitration agreements are to be

strictly construed and such agreements should not be extended by implication. *School Authority* v. *Bogar & Bink*, 261 Pa. Super. 350, 353, 396 A.2d 433 (1978). Accordingly, the basis for arbitration in a particular case is to be found in the written agreement between the parties. *McCaffrey* v. *United Aircraft Corporation*, 147 Conn. 139, 142, 157 A.2d 920, cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960). Persons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves. *School Authority* v. *Bogar & Bink*, supra, 354." *Wesleyan University* v. *Rissil Construction Associates, Inc.*, 1 Conn. App. 351, 354–55, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). The defendant neither signed the Continental contract, nor assented to arbitration pursuant to it. It cannot, therefore, be bound by the decision of the arbitration panel.

In addition to the differences in forum for dispute resolution between the defendant and Continental, the obligations of each are also different under their respective contracts. To collect under Continental's contract, the plaintiff must prove the amount of liability and that a third party is underinsured and legally liable. See *Williams* v. *State Farm Mutual Automobile Ins. Co.*, 229 Conn. 359, 367–68, 641 A.2d 783 (1994). The defendant is an excess carrier, and therefore its contract obligations are triggered only when the claimant's loss exceeded the policy limits of the primary insurer, Continental. See *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn. 779, 784, 606 A.2d 990 (1992); *Pecker* v. *Aetna Casualty & Surety Co.*, 171 Conn. 443, 453, 370 A.2d 1006 (1976). The disparity in contractual obligations further suggests that Continental cannot fully and fairly litigate the defendant's legal interests, and thus there is no privity.

The plaintiff further argues that he should not be compelled to incur the considerable expense of presenting his claim more than once to reach his underinsured motorist coverage. This is no reason, however, to undo a contract, into which the plaintiff freely entered, that specifically grants the defendant the right to litigate its claims.

"[W]e recognize the 'crowning consideration' in collateral estoppel cases and the basic requirement of privity—that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. A trial in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first trial. *State* v. *Fritz*, supra, 204 Conn. 173." *Mazziotti* v. *Allstate Ins. Co.*, supra, 240 Conn. 818–19.

The plaintiff claims that the defendant's interests were represented and protected adequately because Continental's exposure was $1 million while the defendant's was only $200,000. The plaintiff, however, cannot dispute that Continental had no incentive to reduce the amount of damages, once it was established that the plaintiff's damages exceeded $1 million, its maximum exposure. In this case, the arbitration panel did, in fact, produce an award of damages in the amount of $1,150,000. Furthermore, as discussed previously, the rights for which the defendant contracted with regard to the forum it chose to settle disputes would not be "fully protected" if it is forced to join in the arbitration.

Finally, the plaintiff cites *Russo* v. *Allstate Ins. Co.*, Superior Court, judicial district of Waterbury, Docket No. 94-0123171 (December 16, 1997) (21 Conn. L. Rptr. 140), for the proposition that privity exists between

the defendant and Continental. The factual situation is analogous to the present case. In *Russo*, the plaintiff was involved in an automobile accident with an uninsured driver, and the plaintiff made a claim for benefits for his injuries with Aetna Casualty and Surety Company (Aetna), which was submitted to binding arbitration. The arbitrators held that the plaintiff's own negligence was greater than 50 percent and thus found for Aetna. *Russo* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of Waterbury, Docket No. 92-112129S (July 9, 1993) (9 Conn. L. Rptr. 417). On appeal, the arbitrators' decision was affirmed. See *Russo* v. *Aetna Casualty & Surety Co.*, 34 Conn. App. 904, 641 A.2d 153 (1994). The plaintiff then brought an action against the defendant carrier Allstate Insurance Company (Allstate) for his injuries arising from the same accident. *Russo* v. *Allstate Ins. Co.*, supra, 21 Conn. L. Rptr. 140. Allstate filed a motion for summary judgment on the ground that the plaintiff's action was barred by collateral estoppel; id., 140; and the trial court agreed and granted Allstate's motion for summary judgment. Id., 141.

In *Russo*, however, the case was not decided on the basis of privity between the insurance carriers and therefore can not be used to support that proposition. Allstate raised the doctrine of collateral estoppel *defensively* to prevent the plaintiff from getting a second opportunity to litigate the same issue. "The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter *which it already has had an opportunity to litigate. In re Juvenile Appeal (83-DE)*, supra, [190 Conn.] 318." (Emphasis added; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 296. The plaintiff in *Russo* had a full and fair opportunity to litigate his claim. He was adequately afforded an opportunity to make his case, which he, in fact,

appealed to this court. Therefore, it was fair to preclude him, on the basis of the accepted public policy reason behind collateral estoppel, from relitigating the same issue with a second party. In contrast, the plaintiff in the present case attempts to assert collateral estoppel *offensively*. In *Russo*, the defendant, which had not participated in the prior action, sought to preclude the plaintiff, who had participated in the prior action, from relitigating an issue decided against the plaintiff. Here, the plaintiff seeks to preclude a defendant that did not participate in the prior proceedings from litigating an issue decided in the plaintiff's favor. In this case, the party that would be foreclosed from challenging facts already decided never had its full and fair opportunity to litigate the issue itself because it was neither a party to the first action, nor was it in privity with the original party. Consequently, absent privity between Continental and the defendant, it can not be said that the defendant was afforded a full and fair opportunity to litigate its claim.

The dispositive distinction in this case is not that offensive, rather than defensive, collateral estoppel was raised, but that there is no privity between the party that had the opportunity to litigate the issue of liability and the party that the plaintiff seeks to preclude from relitigating that issue.

The judgment is affirmed.

In this opinion the other judges concurred.