[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 7799 RE: PLAINTIFF'S APPLICATION TO VACATE ARBITRATION AWARD
The plaintiff, International Association of Fire Fighters Local 801, AFL-CIO (Local 801), commenced this proceeding seeking to vacate an arbitration award in connection with a collective bargaining agreement (CBA) between Local 801 and the defendant, the City of Danbury. The arbitration award rendered by the state board of mediation and arbitration, by majority ruling, found that the issue presented was not arbitrable.
Local 801 is an employee organization and Danbury is an employer under the Municipal Employee Relations Act, General Statutes § 7-467 et seq. Local 801 represents and is the bargaining agent for all uniformed and investigatory positions, except those of chief and deputy chief, within the Danbury fire department. On February 9, 1999, pursuant to the CBA, Local 801 filed a grievance against Danbury alleging that the city had violated certain terms of the CBA involving medical benefits of retirees. Danbury denied the grievance and Local 801 filed an appeal with the state board of mediation and arbitration.
The subject of the grievance was Danbury's alleged failure to pay the costs of Medicare Part B insurance premiums for several retired employees. Local 801 asserts that, under the CBA, Danbury is responsible for the hospitalization and medical-surgical costs of retired employees and, where the retiree is eligible for Medicare, Danbury may substitute Medicare supplemental coverage for the hospitalization and medical-surgical coverage. The grievance pertains to the failure of Danbury to pay the $45 per month premium for the Medicare insurance that covers surgical procedures.
The state board scheduled Local 801's appeal of the denied grievance for a hearing. Prior to the hearing and in timely fashion, Danbury filed a notice contesting the arbitrability of the dispute, pursuant to General Statutes § 31-97 (b). At a hearing on April 26, 2000, before the panel of mediators appointed by the state board, Local 801 and Danbury agreed to limit the scope of the arbitration award to the following submission: "Is the February 9, 1999 grievance of the Union arbitrable? If not, what shall the remedy be?"
On October 12, 2000, the panel issued an arbitration award ruling that the grievance was not arbitrable due to the "clear and unambiguous language of [the CBA] which controls the resolution of disputes." The panel, in its majority decision, cited to § 1 of Article 6 of the CBA, which provides that the persons having rights to initiate the CT Page 7800 grievance process leading to arbitration are "any employee or group of employees [who] feel aggrieved concerning his or their wages, hours, or conditions of employment, which wages, hours and conditions are controlled by this contract . . . or concerning any matter or condition arising out of the employee-employer relationship. . . ." The panel held that the present Local 801 grievance affects only retirees and their spouses, but not current employees, and that the CBA contains no language concerning the resolution, specifically arbitration, of retiree disputes. The panel held that although the retirees and their spouses may have contractual rights for medical benefits, any disputes arising therefrom are not arbitrable because they are not employees, as defined in the CBA. On November 6, 2000, Local 801 filed the present application with the court to vacate the arbitration award of the panel. "[T]he arbitrability of a dispute is a legal question for the court unless the parties have clearly agreed to submit that question to arbitration." Bridgeport v. Bridgeport Police Local 1159, 183 Conn. 102,104, 438 A.2d 1171 (1981). In this case, it is undisputed that the parties voluntarily submitted the matter to the state panel and the panel rendered a decision.
General Statutes § 52-418 authorizes the Superior Court, on application by any party to an arbitration, to vacate an arbitration award upon a finding of certain specified defects, one being that the arbitration panel exceeded its authority. The Supreme Court has recognized three exceptions to the general rule of judicial deference to arbitration awards, arising when the award: (1) rules on the constitutionality of a statute, (2) violates a proscription of §52-418, or (3) contravenes an established public policy. Schoonmaker v.Cummings Lockwood of Connecticut, P.C., 252 Conn. 416, 428, 747 A.2d 1017
(2000). Local 801's motion to vacate the award is based on the argument that the award is contrary to several strong and established public policies. The issue then is "whether the award falls within the public policy exception to the general rule of deference to an arbitrator's award. . . ." (Internal quotation marks omitted.) South Windsor v. SouthWindsor Police Union Local 1480, Council 15, 255 Conn. 800, 815,770 A.2d 14 (2001). "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the CT Page 7801 lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and a court's refusal to enforce an arbitrator's interpretation of collective bargaining agreements is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the arbitrators' award clearly violates an established public policy mandate. . . . It bears emphasizing, moreover, that implicit in the stringent and narrow confines of this exception to the rule of deference to arbitrators' determinations, is the notion that the exception must not be interpreted so broadly as to swallow the rule." (Brackets omitted; citations omitted; internal quotation marks omitted.) Id., 815-16. When the issue of a violation of public policy is raised, the court must first determine whether a clear and dominant public policy can be identified, and if so, whether the award conforms to the public policy. State v. AFSCME, Council4, Local 2663, AFL-CIO, 59 Conn. App. 793, 797, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000).
Local 801 asserts that the panel's ruling violates the following clear and explicit public policies: (1) the advocation of freedom of contract; (2) the enforcement of contracts; (3) the protection of the enjoyment of property rights of a conferred benefit; (4) the protection against unlawful enrichment; (5) the notion that municipal employers have a duty to bargain in good faith; and (6) the advocation of judicial economy and the alternative use of arbitration in resolving collective bargaining agreement disputes.
In its first five claims, Local 801 ignores the rights of the retirees to bring suit directly against Danbury without the help of Local 801 or the necessity for arbitration. "A retired employee has contractual rights under a collective bargaining agreement for which he may independently seek redress regardless of whether the union chooses to represent him. . . . The signatories to a collective bargaining agreement are not the only entities with rights which arise from that contract . . . Although active employees are deprived of the ability to deal with or directly sue their employer when their bargaining agent has entered into a collective bargaining agreement with the employer,retired employees have no duty to exhaust arbitration procedures required by the agreement before bringing a direct action against their employer." (Citations omitted; emphasis in CT Page 7802 original.) Flynn v. Newington, 2 Conn. App. 230, 238, 477 A.2d 1028, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). Thus, even if the court found that each of the asserted claims were clear and dominant public policies, the award of disallowing arbitration of the claims does not violate any of these policies since the retirees' ability to vindicate their rights under the CBA has not been violated or compromised because such rights may be independently addressed in court.
Local 801's final proposed public policy is the advocation of judicial economy and the alternative use of arbitration in resolving collective bargaining agreement disputes. There is no statute or case law that compels parties to arbitrate all contractual disputes. As Local 801 cites in its brief, "[u]nions and their employers have broad contractual authority to provide administrative remedies for disputes arising out of the employment relationship." Trigila v. Hartford, 217 Conn. 490, 494,586 A.2d 605 (1991). And although arbitration is a favored means of settling differences, "[a]rbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration." Young v. Metropolitan Property Casualty Ins. Co.,60 Conn. App. 107, 115, 758 A.2d 452, cert. denied, 255 Conn. 906,762 A.2d 912 (2000).
The court finds that Local 801 has failed to establish that the subject award is violative of a clear and dominant public policy. Accordingly, for the foregoing reasons, the motion to vacate the arbitration award is denied.
Adams, J.