******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

JON PETERSON ET AL. *v.* ICARE
MANAGEMENT, LLC, ET AL.
(AC 42885)

KAREN MUNDLE ET AL. *v.* ICARE
MANAGEMENT, LLC, ET AL.
(AC 42886)

Bright, C. J., and Cradle and Bear, Js.

*Syllabus*

The plaintiff property owners in Rocky Hill sought to recover damages from
the defendants for, inter alia, alleged private nuisance, in connection
with the defendants' operation of a nursing home facility for prison
inmates on a neighboring property. The town of Rocky Hill had brought
several prior related actions against the defendants based on their pro-
posed use of the property as a nursing care facility for prison inmates,
seeking declaratory and injunctive relief and alleging violations of the
town's zoning regulations. Those actions were consolidated and tried
to the court, which rendered judgment in favor of the defendants, holding
that the defendants' use of the property was a preexisting, nonconform-
ing use and was not in violation of the zoning regulations. The plaintiffs
thereafter commenced the underlying actions, seeking damages and a
declaration from the court that the defendant could not operate the
nursing home facility at the property. The defendants moved for sum-
mary judgment, claiming that the plaintiffs' claims were barred by the
principles of res judicata and/or collateral estoppel based on the court's
prior judgment rendered in the litigation involving the town. The trial
court denied the defendants' motions for summary judgment, holding
that neither res judicata nor collateral estoppel applied because the
claims and issues previously litigated were not sufficiently identical to
those presented in the underlying actions. From the judgments rendered
thereon, the defendants appealed to this court. *Held*:

1. The defendants could not prevail on their claim that the trial court erred
in denying their motions for summary judgment because the plaintiffs'
claims were barred by res judicata: the trial court aptly rejected the
defendants' argument that the court's conclusion in the prior litigation
that the defendants did not violate the town's zoning regulations bars
the plaintiffs' claims in the underlying actions, because, as that court
stated, the claims are fundamentally different; in the present cases,
the plaintiffs asserted tort claims arising not out of an alleged zoning
violation, but, rather, from the alleged loss of value, use and enjoyment
of their real properties, and the plaintiffs also alleged recklessness and
intentional conduct, which require an analysis of the defendants' mental
states, as well as causation and damages, and these elements were not
discussed or determined in the prior litigation; because these tort claims
have fundamentally different legal elements from the previously litigated
zoning violation claim, they are not sufficiently identical to the claims
that were previously litigated; accordingly, the trial court correctly con-
cluded that the elements and analysis of the tort claims differ from the
elements and analysis at issue in the prior litigation, and, therefore, res
judicata did not bar the plaintiffs' claims.

2. The trial court correctly concluded that collateral estoppel did not pre-
clude the plaintiffs from litigating the issue of whether the defendants'
use of the property negatively impacted the plaintiffs: the town did not
allege a nuisance claim in the prior litigation nor could it have asserted
the rights the plaintiffs seek to protect in the underlying actions, and
the court in the prior litigation was not asked to resolve the question
of whether the defendants' operation of the nursing home facility consti-
tuted a nuisance for which the plaintiffs in the present cases would be
entitled to damages; moreover, the court's comment in the prior litigation
regarding whether there was any substantial difference in effect on the
neighborhood resulting from the activities at the defendants' property
was not necessary to its resolution of the zoning issue before it, and,
therefore, the trial court correctly concluded that the court's comment

in the prior litigation was dictum because it was not essential to that court's conclusion.

Argued October 14, 2020—officially released April 13, 2021

*Procedural History*

Action, in each case, for a declaratory judgment regarding the operation of a nursing home facility and to recover damages for, inter alia, private nuisance, and for other relief, brought to the Superior Court in the judicial district of New Britain and transferred to the judicial district of Hartford, where the court, *Wahla, J.*, granted the plaintiffs' motions to consolidate the cases; thereafter, the court, *Noble, J.*, denied the defendants' motion for summary judgment in each case and rendered judgments thereon, from which the defendants appealed to this court; subsequently, this court granted in part the plaintiffs' motion to dismiss the appeals. *Affirmed.*

*Jonathan M. Starble*, for the appellants (defendants in each case).

*Kevin P. Walsh*, for the appellees (plaintiffs in each case).

*Opinion*

CRADLE, J. These two appeals arise from consolidated cases.[1] The defendants in both actions, iCare Management, LLC, SecureCare Realty, LLC, and SecureCare Options, LLC (defendants), appeal from the judgments of the trial court denying their motions for summary judgment, in which they argued that the plaintiffs' claims were barred by res judicata and/or collateral estoppel.[2] On appeal, the defendants claim that the trial court erred in denying their motions because the plaintiffs' claims were previously litigated in an earlier action.[3] We affirm the judgments of the trial court.

The following undisputed facts are relevant to this appeal. The plaintiffs own residential properties neighboring the property owned by SecureCare Realty, LLC, located at 60 West Street in Rocky Hill (60 West).[4] From 2012 through 2015, the town of Rocky Hill (town) brought several related actions against the defendants based on their proposed use of 60 West as a nursing care facility for prison inmates. On December 21, 2012, the town brought an action against SecureCare Realty, LLC, and iCare Management, LLC, seeking a declaratory judgment and injunctive relief. See *Rocky Hill* v. *SecureCare Realty, LLC*, Superior Court, judicial district of Hartford, Land Use Litigation Docket, Docket No. CV-13-6037949-S (*SecureCare I*). In *SecureCare I*, the town asserted that the defendants' proposed use of 60 West, to house prison inmates in a residential zone, violates the town's zoning regulations. The defendants in *SecureCare I* moved to dismiss that action. On April 23, 2013, the court, *Robaina, J.*, dismissed *SecureCare I*, reasoning that "the defendants are entitled to sovereign immunity . . . [because they] . . . are engaging in government functions on behalf of the state."

In February, 2013, the plaintiffs in *Peterson*, Docket No. AC 42885; see footnote 1 of this opinion; brought the first underlying action against the defendants alleging private nuisance and recklessness, and seeking a declaration from the court that the defendants "cannot . . . operate a nursing home facility at 60 West . . . ." On June 15, 2015, the plaintiffs amended their complaint to include an allegation of intentional conduct in connection with the defendants' proposed use of 60 West. The plaintiffs alleged that the defendants' intended use of the property, to house inmates who have been convicted of felonies, violates the town's zoning regulations and amounts to a private nuisance negatively impacting their real property values and their use and enjoyment of their properties. The plaintiffs sought a judgment declaring that the defendants cannot operate a nursing care facility for inmates at 60 West, as well as damages for the diminution of their property values. On September 25, 2014, the plaintiffs in *Mundle*, Docket No. AC 42886; see footnote 1 of this opinion; commenced the second underlying action, which contained allegations

identical to those in the February, 2013 action brought by the *Peterson* plaintiffs.

On January 6, 2015, our Supreme Court reversed the trial court's judgment in *SecureCare I*, and remanded that case to the trial court for a determination of whether the use proposed by the defendants complied with the town's zoning regulations. See *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 267, 299, 105 A.3d 857 (2015). On January 21, 2015, after the defendants began operating the facility, the town[5] brought a second action against SecureCare Realty, LLC, and SecureCare Options, LLC, alleging that the use of 60 West violates the town's zoning regulations. *Rocky Hill* v. *SecureCare Realty, LLC*, Superior Court, judicial district of Hartford, Land Use Litigation Docket, Docket No. CV-15-6057942-S (*SecureCare II*). That complaint sought an injunction ordering the defendants to cease and desist from using 60 West "as a prison/penitentiary, nursing home and/or as an assisting living facility." The defendants in *SecureCare II* moved to dismiss the action based on the pending action in *SecureCare I*. On March 12, 2015, the court, *Hon. Joseph Shortall*, judge trial referee, denied the defendants' motion to dismiss *SecureCare II*, and consolidated the two cases. The town withdrew its complaint in *SecureCare I* on March 17, 2015, and all issues therein were subsumed in *SecureCare II*.

In August, 2015, the defendants filed two administrative appeals in connection with decisions of the Zoning Board of Appeals of the Town of Rocky Hill (board).[6] *SecureCare Realty, LLC* v. *Zoning Board of Appeals*, Superior Court, judicial district of Hartford, Land Use Litigation Docket, Docket No. CV-15-6062010-S; *SecureCare Options, LLC* v. *Zoning Board of Appeals*, Superior Court, judicial district of Hartford, Land Use Litigation Docket, Docket No. CV-15-6062012-S. *SecureCare II* and the two administrative appeals were consolidated and tried to the court, *Hon. Marshall Berger*, judge trial referee, from August 29 through September 1, 2017. In a memorandum of decision dated March 14, 2018, the court held that the defendants' use of the property was a preexisting, nonconforming use and was not in violation of the local zoning regulations.[7] Therefore, the court rendered judgment for the defendants in *SecureCare II*. The town did not file an appeal.

On June 22, 2018, the defendants in the present cases moved for summary judgment, claiming that the plaintiffs' claims were now barred by the principles of res judicata or collateral estoppel, based on the court's March 14, 2018 decision in *SecureCare II*. The defendants argued that the plaintiffs were in privity with the town for purposes of res judicata and that the plaintiffs' claims were the same as those brought in *SecureCare II*. In addition, the defendants argued that, even if the plaintiffs' claims were not precluded by res judicata,

their nuisance, recklessness, and intentional tort claims were barred by collateral estoppel because those claims rely on the defendants' use of the property being in violation of local zoning regulations, which already had been litigated in *SecureCare II*. The plaintiffs objected to the motions for summary judgment, arguing that res judicata and collateral estoppel did not bar their claims because they are not in privity with the town and their legal claims are different from those litigated in *SecureCare II*.

In a memorandum of decision dated April 12, 2019, the trial court, *Noble, J.*, denied the defendants' motions for summary judgment, holding that neither res judicata nor collateral estoppel applied because the claims and issues litigated in *SecureCare II* were not "sufficiently identical to those presented" in the underlying actions. The trial court stated that the "sole question before the court in [*SecureCare II*] was whether the defendants' use of 60 West was a violation of Rocky Hill zoning regulations. . . . [T]he trial court was tasked with making a determination of whether the facility complied with the zoning regulations. . . . This in turn involved the determination of whether the property was in use as a nursing home . . . and whether the use of the property by the defendants was an illegal expansion of a prior nonconforming use. . . . Judge Berger found that the defendants were using the property as a nursing home and that this use was not an illegal expansion of the prior nonconforming use. The latter conclusion requires the consideration of three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) *any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property.* . . . The court found consideration of the first two factors militated in favor of a determination that the defendants' use of the property was not an illegal expansion of a nonconforming use. . . . As a consequence, the court held that it did not need to address whether there was a substantial difference in effect upon the neighborhood resulting from differences in the activities conducted at the property." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.)

The court differentiated the claims in the present cases from the claims litigated in *SecureCare II* by observing that the "present claims are not that the defendants violated zoning regulations, but that the defendants are liable for nuisance, recklessness and intentional conduct. These claims differ from a pure consideration of whether the use of the property violates zoning regulations in that a common-law private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. . . . Moreover, there can be no doubt that a use which does not

violate zoning restrictions may nonetheless create a common-law nuisance." (Citations omitted; internal quotation marks omitted.)

Because the underlying claims were not the same in both actions, the court concluded that the judgment in *SecureCare II* "cannot serve as the basis for res judicata" and that there "is nothing in [the *SecureCare II*] decision that dispositively addresses the plaintiffs' use and enjoyment of their properties, a necessary element of a nuisance claim." Accordingly, the court held that the plaintiffs' claims were not barred by res judicata or collateral estoppel. These appeals followed.

On appeal, the defendants claim that the trial court erred in failing to grant their motions for summary judgment on the grounds of res judicata or collateral estoppel because the plaintiffs are in privity with the town, the underlying claims are the same as the claims in *SecureCare II*, and an essential element of the plaintiffs' claims was decided by the trial court in that case. The plaintiffs argue that they are not in privity with the town and that they are asserting fundamentally different claims from those litigated in *SecureCare II*. We agree with the plaintiffs and affirm the judgments of the trial court.

The standard of review of a trial court's decision on a motion for summary judgment is well established. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

I

The defendants first claim that the trial court erred in denying their motions for summary judgment because the plaintiffs' claims, as a matter of law, were barred by res judicata. We disagree.

"The applicability of the doctrine of res judicata presents a question of law that we review de novo. . . . Res judicata, or claim preclusion, express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue. . . .

"Res judicata bars the relitigation of claims actually made in the prior action as well as any claims that might have been made there. . . . Public policy supports the principle that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 156–57, 129 A.3d 677 (2016).

"To determine whether claims are the same for res judicata purposes, this court has adopted the transactional test. . . . Under the transactional test, res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the [present] action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted). Id., 159–60.

Although the defendants raise arguments in support of both the second and fourth elements, it is the fourth element—that the same underlying claim must be at issue—that is central to our discussion. The defendants argue, as they did before the trial court, that the court's conclusion in *SecureCare II* that the defendants did not violate the town's zoning regulations bars the plaintiffs from pursuing their claims in the present cases because the allegation of a zoning violation is essential to the plaintiffs' claims.[8] Consequently, they contend that the plaintiffs' tort claims are functionally the same as the

claims asserted by the town in *SecureCare II*. The trial court aptly rejected this argument, stating that the claims are fundamentally different.

In *SecureCare II*, the town alleged that the defendants' operation at 60 West violated two provisions of the zoning regulations and sought declaratory and injunctive relief to prohibit the defendants from operating the facility. In order to prevail, the town had to prove that the defendants' activities were an illegal extension or change of the nonconforming use. In determining whether the town met this burden, the court in *SecureCare II* focused on "the use [of 60 West as a convalescent home and hospital] and any expansion or intensification of that use." The court performed an extensive analysis of the language of the zoning regulations, as well as the defendants' particular operation, to conclude that the use was a legal continuation of a prior nonconforming use.

By contrast, the plaintiffs in the present cases assert tort claims, including a claim of private nuisance, arising not out of an alleged zoning violation but, rather, from the alleged loss of value, use and enjoyment of their real property. As the trial court aptly noted, Connecticut courts have long held that "a use which does not violate zoning restrictions may nonetheless create a common-law nuisance." *Herbert* v. *Smyth*, 155 Conn. 78, 83, 230 A.2d 235 (1967). "The essence of a private nuisance is an interference with the use and enjoyment of land." (Internal quotation marks omitted.) *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 80, 171 A.3d 409 (2017). In order to succeed on a claim of private nuisance, the plaintiff "must prove that: (1) there was an invasion of the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the invasion; and (3) the invasion was either intentional and unreasonable, or unintentional and the defendant's conduct was negligent or reckless. . . . [S]howing unreasonableness is an essential element of a private nuisance cause of action based on . . . recklessness." (Citation omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 358, 788 A.2d 496 (2002). A use which is in accordance with zoning regulations can, nonetheless, be unreasonable. See *Maykut* v. *Plasko*, 170 Conn. 310, 317, 365 A.2d 1114 (1976).

The plaintiffs also allege recklessness and intentional conduct, which require an analysis of the defendants' mental states, as well as causation and damages. These elements were not discussed in *SecureCare II* because the town was solely seeking injunctive relief and a declaratory judgment as a result of the alleged zoning violations. The court in *SecureCare II* neither discussed nor determined whether any of the elements of private nuisance, recklessness, or intentional conduct were met. Because these tort claims have fundamentally different legal elements from the previously litigated zon-

ing violation claim, they are not sufficiently identical to the claims that were litigated in *SecureCare II*. The plaintiffs' claims are not predicated on the existence of a zoning violation but, rather, on alleged tortious conduct. The plaintiffs seek relief, including compensatory and punitive damages,[9] that is materially different from the relief sought in *SecureCare II*. Accordingly, we agree with the trial court's conclusion that the elements and the analysis of the tort claims differ from the elements and analysis litigated in *SecureCare II*, and, therefore, res judicata does not bar the plaintiffs' claims.

## II

The defendants also argue that, even if the plaintiffs' claims are not precluded by res judicata, collateral estoppel precludes the plaintiffs from relitigating the issue of whether the defendants' use of 60 West negatively impacts the plaintiffs.

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated* in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . Before collateral estoppel applies [however] there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . In other words, collateral estoppel has no application in the absence of an identical issue. . . . Further, an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." (Emphasis in original; internal quotation marks omitted.) *Independent Party of CT–State Central* v. *Merrill*, 330 Conn. 681, 7114, 200 A.3d 1118 (2019).

In their motions for summary judgment, the defendants asserted that the plaintiffs were precluded from relitigating whether the defendants' use of the property violates local zoning regulations and whether the operation of 60 West had an impact on the plaintiffs' properties. The defendants argue on appeal that the court in

*SecureCare II* already determined that the operation at 60 West did not negatively affect the plaintiffs' properties and, as a result, the plaintiffs are precluded by collateral estoppel from raising this issue again in their nuisance claims. The plaintiffs argue that the trial court's discussion regarding the impact to the neighborhood was dictum because it was a "[f]inding on [a] nonessential [issue]," and, therefore, the trial court did not make any conclusive determination as to the impact, if any, of the defendants' conduct on the plaintiffs' properties for purposes of collateral estoppel.

The court in *SecureCare II*, in concluding that the defendants' use of the property was not in violation of the zoning regulations, found that the defendants' use of 60 West was not an illegal expansion of the prior nonconforming use. In reaching its conclusion, that court found that a consideration of the first two factors, "(1) the extent to which the current use reflects the nature and purpose of the original use . . . and (2) any differences in the character, nature and kind of use involved," supported the determination that the use was not an illegal expansion of a nonconforming use. (Internal quotation marks omitted.) The court in *SecureCare II* did not reach the third factor, whether the use resulted in "any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property," because the first two factors supported a conclusion that the defendants' use was a legal expansion of a prior nonconforming use. (Internal quotation marks omitted.) That court merely noted that the town presented evidence regarding some neighbors' fears of the "individuals [housed at 60 West] and the impact of the fear on their families' lives." The court then stated, in a footnote, that "any evidence presented on the negative effects on the neighborhood [was] based on speculation and the perceived change in the patient population not upon the activities on the property."

In rejecting the defendants' collateral estoppel argument in the present cases, the trial court held that the comment made by the court in *SecureCare II* in a footnote regarding the negative effects on the neighborhood was "clearly dict[um]" and that that there was "nothing in [the court's] decision that dispositively addresses the plaintiffs' use and enjoyment of their properties, a necessary element of a nuisance claim."

On appeal, the defendants argue that the plaintiffs' claims are premised on the alleged zoning violations and the alleged negative impact that these violations have had on the plaintiffs. The defendants argue that *SecureCare II* established that the defendants' use of 60 West did not violate zoning regulations, did not negatively impact the plaintiffs' lives or properties, and that Judge Berger's comment was not dictum, but, rather, a statement that the plaintiffs in that case "had so clearly

failed to prove negative effects, that the issue could be disposed of summarily without significant additional discussion." We disagree with the defendants.

The town neither alleged a nuisance claim in *SecureCare II* nor could it have asserted the rights that the plaintiffs seek to protect in the present action. Consequently, the court in that case was not asked to resolve, and did not resolve, the question of whether the defendants' operation at 60 West constituted a nuisance for which the plaintiffs in the present cases would be entitled to damages. Furthermore, the court's comment in *SecureCare II* regarding whether there was any substantial difference in effect on the neighborhood resulting from the activities at 60 West was not necessary to its resolution of the zoning issue before it. Rather, the court in *SecureCare II* adjudicated the zoning issue without determining whether the defendants' activities had a negative impact on the plaintiffs' properties and lives, because, as the trial court in the present cases stated, "consideration of the first two factors militated in favor of a determination that the defendants' use of the property was not an illegal expansion of a nonconforming use." Because the first two elements supported that conclusion without a consideration of the third element of whether the change in operations had a negative impact on the surrounding neighborhood, the court did not need to reach that issue. We therefore agree with Judge Noble's characterization of the court's statement in the footnote as dictum because it was not essential to the court's conclusion. See *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 736, 887 A.2d 394 (2005) ("[d]ictum includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case" (internal quotation marks omitted)).[10]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In *Peterson* v. *iCare Management*, *LLC*, Docket No. AC 42885, the plaintiffs are Antonio Fabi, Katherine Fabi, Joshua Egan, Lauren Egan, Anthony Coco and Tonilynn Coco. Jon Peterson, Amber Peterson, Brian Crawford and Nicole Crawford were named as plaintiffs, but they subsequently withdrew their claims in June, 2017. In *Mundle* v. *iCare Management*, *LLC*, Docket No. AC 42886, the plaintiffs are Karen Mundle, Raymond Prevedini and Judith Prevedini. The underlying actions in each appeal were brought against the same three defendants, iCare Management, LLC, SecureCare Realty, LLC, and SecureCare Options, LLC. The cases were consolidated in October, 2016.

Unless otherwise noted, all references in this opinion to the plaintiffs are to the plaintiffs in both the *Peterson* and *Mundle* actions. Similarly, all references in this opinion to the defendants are to SecureCare Realty, LLC, SecureCare Options, LLC, and iCare Management, LLC.

In each appeal, the defendants assert identical underlying facts, legal claims, and challenges. In addition, the pleadings filed with both the trial court and this court are identical. Although these appeals have not been consolidated by this court, we write one opinion for purposes of judicial economy in which we assess the claims made in both appeals.

[2] We note that, although "[t]he denial of a motion for summary judgment is not ordinarily appealable because it is not a final judgment . . . an appeal may be taken from the denial of a motion for summary judgment when such

motion raises the defense of collateral estoppel." (Citations omitted; internal quotation marks omitted.) *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 112, 758 A.2d 452, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000).

[3] See *Rocky Hill* v. *SecureCare Realty, LLC*, Superior Court, judicial district of Hartford, Land Use Litigation Docket, Docket Nos. CV-13-6037949, CV-15-6057942-S, CV-15-6062010-S, and CV-15-6062012-S (March 14, 2018) (66 Conn. L. Rptr. 437), which involved four consolidated cases all related to the use of the defendants' facility.

[4] SecureCare Realty, LLC, is the owner of 60 West. SecureCare Options, LLC, is an entity formed by iCare Management, LLC, to lease 60 West from SecureCare Realty, LLC, and to operate the nursing home, and iCare Management, LLC, provides management services to the other defendants.

[5] Kimberly Ricci, assistant zoning enforcement officer, was also a named plaintiff.

[6] While *SecureCare I* was pending before our Supreme Court, the defendants were issued two "Notice of [V]iolation, Cease and Desist" orders on May 29, 2013, by the town's zoning enforcement officer. The defendants responded, in writing, that these orders were in violation of the trial court's orders in *SecureCare I*. On January 23, 2015, seventeen days after our Supreme Court's decision remanding *SecureCare I* and two days after *SecureCare II* was filed, the defendants appealed the cease and desist orders to the board. The board dismissed the appeals on July 15, 2015, stating that it lacked jurisdiction. The appeals dated August 12, 2015, were filed in response to the dismissal of the appeals by the board dated January 23, 2015.

[7] In reaching this conclusion, Judge Berger acknowledged the history of the property at 60 West, stating that "[u]se of the property as a 'convalescent home and hospital' was approved by the Planning and Zoning Commission of the Town of Rocky Hill on April 12, 1965. . . . It was continuously used as a licensed chronic and convalescent nursing home . . . from 1967, to August 24, 2011, when the facility was closed and the license became inactive. . . . The Connecticut Department of Public Health issued the defendants a new . . . license for its facility, 60 West, on or around May 2, 2013. . . . The license was the same type of license that was in effect for the property continuously from 1967 until 2011, but allowed for 95 beds instead of 120." (Citations omitted; footnote omitted.)

[8] The defendants also argue, as they did before the trial court, that the plaintiffs are in privity with the town. The trial court declined to address the issue of privity, concluding that "[t]he court need not address the issue of privity because it does not find that the claims and issues litigated in [*SecureCare II*] are sufficiently identical to those presented in the present action," and that all four elements of res judicata are essential for the doctrine to apply. Because we agree with the trial court's conclusion that the plaintiffs' claims are not identical to those already litigated by the town, we likewise need not address the defendants' privity argument.

[9] Specifically, the plaintiffs claim compensatory damages, punitive damages, a declaration that the defendants cannot operate a nursing home facility at 60 West, attorney's fees and costs.

[10] Even if the court in *SecureCare II* needed to reach, and had definitively resolved, the third element, any assessment of the adverse impact on the *neighborhood* for the purpose of determining whether there was a zoning violation would not have involved the same analysis of the adverse impact on the *plaintiffs' lives and values of their properties* in the private nuisance claims. Because an adverse impact to each plaintiff's property is an essential element of each plaintiff's nuisance claim and because such impact clearly was neither actually litigated nor necessarily determined in *SecureCare II*, collateral estoppel would not bar the plaintiffs' claims.